TABLE OF EXHIBITS

1. September 18, 2015 Level I Appeal Letter with Patient DOS April 10, 2015

2. October 1, 2015 HCA Response to Level I Appeal with Patient DOS April 10, 2015

3. November 9, 2015 Cigna's Associate Chief Counsel William Welch response to claim of Patient DOS April 10, 2015

4. April 27, 2016 Attorney Response to Level II Appeal for Patient DOS April 10, 2015

5. June 3 Attorney Response with Anti Assignment language for Patient DOS March 1, 2016

# Exhibit 1



**ALTUS**
HEALTHCARE MANAGEMENT SERVICES

11233 Shadow Creek Parkway, Suite 313
Pearland, TX 77584
JNavarro@altushealthsystem.com
www.altushealthsystem.com

September 18, 2015

**Baytown**
1626 W. Baker Street
Baytown, Texas 77521
281.837.7600 **MAIN**
713.436.1491 **FAX**

**Beaumont**
390 N 11th Street
Beaumont, Texas 77702
409.981.5500 **MAIN**
409.981.5501 **FAX**

**Houston**
9901 Town Park Drive
Houston, Texas 77036
713.773.0556 **MAIN**
713.773.1388 **FAX**

**Corporate Office**
11233 Shadow Creek Pkwy
Suite 313
Pearland, Texas 77584
832.230.5107 **DIRECT**
713.510.1881 **FAX**

*Via Certified Letter*
**CIGNA Healthcare Inc. National Appeals Unit (NAO)**
**Attn:** HCA Inc. Plan Administrator
PO Box 188011
Chattanooga, TN  37422

<u>**ERISA & PPACA Level I Appeal**</u>
**Governing Plan Documents, Summary Plan Description,**
**Summary of Benefits and Coverage, Form 5500 Request,**
**and Complete Claim File & Administrative Record Request**
**Appeal of Claim Denial under 29 C.F.R. §2560.503-1, 26 C.F.R. §54.9815-2719T(a) and (b),**
**29 C.F.R. §2590.715-2719, and 45 C.F.R. §147**

Patient Name: Sarah Anderson
Insured Name:  Sarah Anderson
Carrier: Cigna
Plan Number:  2498995
Insured ID: U54685030 01
Date of Service:  10 April 2015
Amount of Benefits Billed: $6,438.85
EOB Date: 22 August 2015
Benefits Payment Received: $0.00

Dear HCA Inc. Plan Administrator,

We are the duly authorized assignee of all rights, benefits, and remedies of Sarah Anderson under the above-referenced ERISA-governed plan ("the Plan"). This is our level 1 appeal pursuant to ERISA to your adverse benefit determination in this case, in light of the recent ruling by the United States Court of Appeals for the Fifth Circuit in *North Cypress Medical Center Operating Co. v. Cigna Healthcare.*[1]

---

[1] 781 F.3d 182 (5th Cir. 2015).



A L T U S
HEALTHCARE MANAGEMENT SERVICES
JNavarro@altushealthsystem.com
www.altushealthsystem.com

If we do not receive a substantive response or resolution of this dispute in a manner that complies with ERISA within thirty (30) days, we will deem your lack of response and/or lack of cooperation to indicate that any further administrative appeals will be futile, entitling us to seek judicial review of this matter immediately.

On 22 August 2015 your third-party claim administrator and agent, Cigna, issued an Explanation of Benefits in this matter. We enclosed the EOB as Exhibit 1. The EOB stated, in pertinent part:

> "...SEE THE EXCLUSIONS PAGE OF YOUR CIGNA-ADMINISTERED PLAN DOCUMENT: CHARGES WHICH YOU ARE NOT OBLIGATED TO PAY OR FOR WHICH YOU ARE NOT BILLED OR FOR WHICH YOU WOULD NOT HAVE BEEN BILLED EXCEPT THAT THEY WERE COVERED UNDER THE PLAN ARE NOT COVERED. CIGNA WILL RECONSIDER THIS CLAIM ONCE WE SEE PROOF OF YOUR PAYMENT."

> "...WE HAVEN'T RECEIVED THE INFORMATION WE REQUESTED ABOUT THIS CLAIM. WE'LL CLOSE IT UNTIL WE GET THE INFORMATION WE NEED."

This EOB is both factually untrue and legally incorrect, and therefore it and the adverse benefit determination it announces are in violation of ERISA.

**Our Standing to Make This Claim**

The patient executed a valid and enforceable Legal Assignment of Benefits and Designation of Authorized Representative form ("the Legal Assignment"), which we enclose with this letter as Exhibit 2. The Legal Assignment clearly and unequivocally assigned all pertinent rights and benefits from the patient, who is a participant and/or beneficiary of the Plan, to us.

It is well established law that a Plan participant or beneficiary may assign rights and benefits. The patient in this claim did so unconditionally, knowingly, and voluntarily As the US Court of Appeals for the Fifth Circuit stated in its recently decided *North Cypress*, "[w]e have consistently held that the ability of patients to assign their claims to medical providers is both permissible and beneficial."[2] In *North Cypress*, a portion of the lawsuit revolved around North Cypress Medical Center's claim that it had standing because it, through the benefits assigned to it by its patients, had suffered actual injury by way of Cigna's adverse benefit determinations. The Fifth Circuit stated a carrier's refusal to pay a medical provider, as directed by a patient, may be the cause of an actual injury to the ERISA beneficiary.[3] Because engaging in the appeals process will redress this injury, the Fifth Circuit states "the 'irreducible constitutional minimum of standing' is thus

---

[2] 781 F.3d 182, 195
[3] *Id.*



JNavarro@altushealthsystem.com
www.altushealthsystem.com

satisfied."[4] Thus, we clearly have standing to make the claim we have made, to make this administrative appeal, and to take judicial action if you continue to refuse to comply with ERISA.

### Appeal of Denial for "Charges Which You Are Not Obligated to Pay…."

Your agent Cigna has refused to approve our claim on the grounds that we must obtain payment from the patient of all unmet deductibles, co-insurance and co-pay amounts on the date we provide the health care services before we may present a claim to the Plan. Your agent Cigna is well known for claiming that "prompt-pay," "up-front," or other alleged "waivers" are impermissible under a "policy" that it consistently fails and refuses to demonstrate to claimants actually exists within the governing Plan documents. This alleged "requirement" is factually incorrect and legally improper for the reasons set forth in this letter.

First, we have never engaged in any form of "up-front," "prompt-pay", or other "waiver" of patients' shares of the charges for their health care services. We do not offer such discounts and have no practice of providing them.

Second, the administrative record shows incontrovertibly that the patient is and remains fully obligated for all uncovered portions of the claim. Specifically, and without limitation:

     1. The patient signs the Legal Assignment which states in relevant part, "**I understand and agree that I am legally responsible for any and all actual total charges expressly authorized by me regardless of any applicable insurance or benefit payments**"; and

     2. The patient also signs our Financial Policy Form, which we enclose as Exhibit 3, and in signing it acknowledges its terms and conditions which include in relevant part, "**However, you will be personally responsible for your account balance regardless whether or not if your insurance will pay for your total balance of your claims**."

Thus, our documents clearly show that the patient unconditionally acknowledges that the patient remains obligated for all financial responsibility in respect of the health care being provided. These forms and the processes underlying them comply with the guidelines articulated by federal courts.[5]

Most importantly, your agent's requirement that we bill and collect 100 percent of the unmet deductible, co-insurance and co-pay amounts at the time we provide health care services is directly contrary to ERISA as unequivocally interpreted by the Fifth, Ninth and Eleventh Circuits. In *North Cypress*, Cigna underpaid North Cypress Medical Center on a number of claims based on an exclusion in the Cigna health plans at issue, for "'charges which you are not obligated to pay or for which you are not billed.'" This language is strikingly similar on the EOB exclusion on which Cigna relies with respect to TPSC's claims. Cigna tried to argue this language absolved the plans of any obligation to pay the full usual and customary charge because North Cypress Medical

---

[4] *Id.* (quoting *Lujan v. Wildlife Defenders*, 504 U.S. 555, 560).
[5] *Kennedy v. Connecticut General Life Insurance Company*, 924 F.2d 698,701 (7th Cir. 1991).



A L T U S
HEALTHCARE MANAGEMENT SERVICES
JNavarro@altushealthsystem.com
www.altushealthsystem.com

Center, pursuant to its standard prompt-payment discount, allowed patients to pay only a small fraction of their cost-share obligations under the relevant plans. The Fifth Circuit disagreed, noting that "[t]here are strong arguments that Cigna's plan interpretation is not 'legally correct,'" and that under a fairer reading of the plan language, the exclusion may be "simply describing the fact that the insurance does not cover all of a patient's costs." The Court also noted that Cigna's interpretation <u>could not</u> be legally correct if Cigna only enforced the exclusion against out-of-network providers.

The Fifth Circuit's decision in *North Cypress* readily confirms that Cigna is erroneously, if not fraudulently, refusing to pay the Plan's portion of the medically necessary treatment performed by us on behalf of Plan members and beneficiaries. Significantly, the Plans themselves do ***not*** require insureds to pay their putative share of the bill from out-of-network providers prior to the payment of benefits otherwise owed under the Plans, nor do the Plans require the out-of-network providers to agree in advance to pursue collections from the insureds of the portion of the bill that is not covered by the Plan.

We enclose as Exhibit 4 the letter of J. Douglas Sutter, Esq., counsel for North Cypress Medical Center in its case against Cigna. This is a case I am sure you are quite familiar with, and one where the fact situation and the spurious claim by Cigna that the health care provider must comply with Cigna's "requirement" of billing and collecting uncovered portions of the claim in advance is identical to the position Cigna, as the agent of the Plan and Plan Administrator, is taking in our case. Mr. Sutter's letter to the Court of Appeals quite clearly states why Cigna's allegation of some mystical difference is inapplicable, and we incorporate his relevant arguments here.

Since we have complied with all relevant, enforceable requirements, since we have documented the patient's acknowledgment of continuing financial responsibility, and since there is no factual or legal basis for your agent Cigna to make or to maintain the adverse benefit determination that is the subject of this letter, we hereby demand that you comply immediately with applicable legal authority and your stated Plan provisions and make benefits payments strictly in accordance with the applicable Plan terms and conditions. Your failure or refusal to do so will entitle us to seek immediate judicial review, possibly on behalf of all similarly situated Plan participants and beneficiaries as well as their authorized representatives. 29 C.F.R. §2560.503-1(m)(1) allows us to deem the administrative remedies exhausted:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under Section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

We respectfully encourage you to seek independent legal counsel—"independent" meaning counsel not retained, appointed, or otherwise engaged by your agent Cigna—to review the above-



JNavarro@altushealthsystem.com
www.altushealthsystem.com

referenced legal authorities, in order to avoid unnecessary judicial review on behalf of similarly situated Plan participants and beneficiaries and their authorized provider representatives.

If we do not receive a substantive response or a resolution to our appeal that complies with ERISA within thirty (30) days of the date of this letter, we shall take all steps permitted to protect our legal rights.

If this plan contains an unambiguous anti-assignment clause prohibiting assignment of rights, benefits and causes of action in the Plan, be advised, United States District Judge Lynn Hughes has already rejected this argument. In *Oprex Surgery (Baytown) L.P. v. Sonic Automotive Employee Welfare Benefit Plan*[6], Judge Hughes held the anti-assignment language relied upon by the plan-defendant, Sonic Automotive, "does not preclude a physician proposing current care from acting as a claims agent for a beneficiary."[7] The court goes on to emphatically dispose of any argument by stating "[t]he direction of payment of the benefits to a doctor for collection for his work **is not an alienation but an efficient delegation of authority**."[8] Accordingly, it is clear any anti-assignment clause contained within the Plan is inapplicable to these claims, and Town Park Surgery Center has valid standing by way of its Assignment of Benefits.

The records we request are:

1.  A true and correct set of your governing Plan documents in their entirety;
2.  Your Summary Plan Description ("SPD");
3.  Your Summary of Benefits and Coverage ("SBC");
4.  Your IRS Form 5500;
5.  Your complete claim file and administrative record on this claim;
6.  All publications, databases, or other records used to determine your Usual, Customary, and Reasonable charges or rates for this plan in accordance with the Department of Labor Advisory Opinion 96-14A;
7.  For any self-insured plan, all third-party administrator ("TPA") or administrative services only ("ASO") agreements in effect at the time of the claim in question or coming into effect since that time; and
8.  Any other records, including all records generated, maintained, or retained electronically, digitally, or optically, not specifically requested above but that amend, clarify, supplement, supplant, or relate to the above-requested records or the claim in question.
9.  Complete and accurate copies of any and all databases, trust account or other custodial statements, spreadsheets, monthly statements, and annual statements for the past five years in connection with any Plan and/or Plan TPA withholding, overpayment offset, recoupment, or similar action, or equitable relief action, including without limitation proof of any refund or redeposit of funds for any alleged overpayment recovery.

---

[6] *Oprex Surgery (Baytown) L.P. v. Sonic Automotive Employee Welfare Benefit Plan*, No. 4:14-CV-02330 (S.D. Tex. August 10, 2015)(holding anti-assignment precluded assignment to third parties, but not to provider).
[7] *Id.* at *2.
[8] *Id.*



JNavarro@altushealthsystem.com
www.altushealthsystem.com

Sincerely,

*/s/ Jeanine Navarro*
Jeanine Navarro, Legal Counsel

**Exhibits Enclosed:**

1. Explanation of Benefits ("EOB")
2. Legal Assignment of Benefits and Designation of Authorized Representative
3. Financial Policy Form
4. Letter of J. Douglas Sutter, Esq.

# Exhibit 2

# HCA

One Park Plaza
Nashville, TN
37203

October 1, 2015

RECEIVED   OCT 0 9 2015

Altus Healthcare Management Services
Attn: Jeanine Navarro
11233 Shadow Creek Pkwy, Suite 313
Pearland, TX  77584

Re:  Sarah Anderson
DOS:  4/10/2015

Dear Ms. Navarro,

HCA strives to provide quality, cost-effective healthcare to members of our benefit plans, which is the foundation of our employee benefits philosophy.  We appreciate your comments and feel it is important to respond to the issues and concerns you have expressed.

Cigna confirmed that your provider dispute appeal has been received, but is still within the 45 business day turnaround.  Cigna will work diligently to review your appeal as soon as possible.

HCA considers this appeal withdrawn at this time.

In accordance with ERISA requirements, the Plan Administrator and those persons acting on behalf of the Plan Administrator have interpreted and based this decision on the terms of the plan.  This determination was based solely on the applicable facts and evidence provided.  All decisions of the Plan Administrator are final and binding.

Respectfully,


Benefit Appeals Committee

cc: Sarah Anderson

# Exhibit 3

**William M. Welch II**
Associate Chief Counsel
Cigna Legal

RECEIVED   NOV 1 1 2015



November 9, 2015

900 Cottage Grove Road
B6LPA
Bloomfield, CT 06152
Tel  860-226-3353
William.Welch@Cigna.com

VIA UPS 2nd DAY DELIVERY

Jeanine Navarro
Legal Counsel
Altus Healthcare Management
11233 Shadow Creek Parkway, Suite 313
Pearland, TX  77584

    Re:  Town Park Surgery Center ("TPSC")

Dear Ms. Navarro:

Cigna has received your form letter, dated September 18, 2015, addressed to the Plan Administrator for HCA, Inc., a Cigna client, for Cigna customer S.A.  You submitted the letter on behalf of TPSC and styled the letters as a "Level I appeal" and a request for plan documents as well as other documents.  Because you claim to serve as the authorized agent of TPSC, all references to "you" or "your" include TPSC unless otherwise specified herein.

Background

As you know, on August 31, 2015, the United States District Court for the District of Connecticut issued its opinion in *Connecticut General Life Insurance Co., et al. v. True View Surgery Center, et al.*, No. 14-CV-1859 (AVC), Dkt. 65, a lawsuit that includes as a defendant TPSC.  In that opinion, the court concluded, among other things, that Cigna's allegations of TPSC's "practice of submitting claims to Cigna without disclosing a waiver of cost–share requirements" as well as other conduct "***sufficiently state false representations*** [by TPSC] ***with particularity***." (emphasis added).  Cigna intends to use your letter and the statements contained therein as further evidence to support Cigna's allegations.

Altus' Status as the Duly Authorized Assignee

You assert that Altus is the duly authorized assignee of the Cigna customer.  Altus is not the assignee.  Assuming arguendo the validity of the customer's assignment of benefits, the customer did not assign any benefits to Altus, and your attached exhibit proves as much.  Nor have you presented any evidence to establish the conveyance of any assignment to Altus.  Nevertheless, given the involuntary nature of a regulatory request, Cigna and the Plan have no

"Cigna" is registered service mark and the "Tree of Life" logo is a service mark of Cigna Intellectual Property, Inc., licensed for use by Cigna Corporation and its operating subsidiaries. All products and services are provided by or through such operating subsidiaries, including Connecticut General Life Insurance Company, and not by Cigna Corporation.

Jeanine Navarro
Page 2

choice but to respond to your facially invalid letter, but waive no arguments or rights in doing
so.

<u>Your Appeal Request</u>

As an initial matter, if you sent your Level I appeal to the Plan Administrator, your letter is not a
valid appeal because you sent your appeal to the wrong entity. The *only* Level I administrative
appeal right, if applicable for this Plan, that the Cigna customer purportedly assigned to TPSC
was the right to submit an appeal to the claims administrator, not the Plan Administrator. You
now have received countless notices that Cigna is the claims administrator and handles
administrative appeals, while the Plan Administrator does not. Any Level I appeals sent to the
Plan Administrator and not to Cigna will be treated as invalid appeals.

Cigna has an appeals process that you must follow under ERISA, and ERISA requires that you
fully exhaust those administrative remedies. *See Crowell v. Shell Oil Co.*, 541 F.3d 295, 308 (5th
Cir. 2008)("'[t]his court requires that claimants seeking benefits from an ERISA plan . . . first
exhaust available administrative remedies under the plan before bringing suit to recover
benefits.'")(quoting *Bourgeois v. Pension Plan for the Employees of Sante Fe Int'l Corps.*, 215
F.3d 475, 479 (5th Cir. 2000).

TPSC can find an explanation of Cigna's Appeal Process at www.cigna.com/appeals. TPSC can
find additional information about what type of information needs to be submitted when filing an
appeal at Cigna's website for healthcare professionals. *See* www.cigna.com/healthcare-
professionals/resources-for-health-care-professionals/clinical-payment-and-reimbursement-
policies/claim-policies-procedures-and-guidelines/claim-adjustment. TPSC needs to follow
Cigna's administrative appeals process because, as the courts have recognized, the process
allows for the early resolution of issues. The individuals who handle appeals have ready access
to claim, benefits, and plan information and have special procedures in place to handle the
processing of appeals.

TPSC cannot credibly argue that exhaustion of your administrative appeals would be futile. As
you know, where TPSC has submitted evidence of cost share payments on appeal, or Cigna has
determined that a Cigna customer's cost share obligations have been met for the calendar year
as a result of your appeal, Cigna has reprocessed the claim and paid the Plan's proportionate
share under the terms and conditions of the applicable health benefits plan. Therefore, by
definition, administrative appeals have not been futile.

**<u>Non-Coverage of Charges for Waiver of Cost Share</u>**

Cigna health benefits plans exclude from coverage "charges which you [the Cigna customer] are
not obligated to pay or for which you [the Cigna customer] are not billed or for which you [the
Cigna customer] would not have been billed except that they were covered under this plan." In
addition, our plans define "Covered Expenses" as "expenses incurred" by or on behalf of the

Jeanine Navarro
Page 3

member and "Deductible" as the amount that must be paid before the Plan will pay. Indeed, the
Plan has no obligation to pay until the deductible has been satisfied.

In other words, only expenses that a Cigna customer is obligated to pay are reimbursable. If a
Cigna customer is not obligated to pay or billed a charge, any claim for reimbursement for any
part of that charge under such a contract or benefit plan might not be covered. Because TPSC
steps into the shoes of the Cigna customer when TPSC seeks reimbursement from Cigna, TPSC
may not unilaterally alter the terms of Cigna's contract with its Cigna customer. Cigna has
consistently interpreted its plan language in this manner for over twenty years, and various
federal courts have upheld Cigna's interpretation of that plan language. *See, e.g., Biomed
Pharmaceuticals, Inc. v. Oxford Health Plans (NY), Inc.*, 12-3023, 2013 WL 2991293 (2d Cir.
2013); *Smilecare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th
Cir. 1996) (adopting reasoning of *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 701 (7th
Cir. 1991); *Cedars-Sinai Medical Center v. Massachusetts Mutual Life Insurance Co.*, No. 94-
cv-55065, 1995 WL 564757 at *3 (9th Cir. 1995) ("[b]ecause health insurance is a contract to
indemnify, courts have found that insurers are not obligated to provide coverage under a policy
when the insured has no obligation to pay for medical services"). This exclusion applies even if
a particular medical procedure has been deemed medically necessary or allowable.

Your interpretation of the Fifth Circuit's opinion in *North Cypress* is incorrect. The holding in
*North Cypress* pertained solely to Article III standing, and certainly did not rule upon or validate
the practice of cost share waiver in violation of the terms and conditions of a Cigna health
benefits plan. In fact, the Fifth Circuit specifically noted that "[t]he question of whether the
money is in fact owed goes to the merits," which the Fifth Circuit did not address. *North
Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 193 fn. 39 (5th Cir. 2015).
Regarding the various points raised by you, the Fifth Circuit stated unequivocally, "[w]e say this
much not to suggest an answer but only to underline the many issues Cigna asks us to decide.
We cannot resolve the merits on this record, truncated as it was by the grant of summary
judgment for want of standing." *Id.* at 196. Moreover, the district court in the Eastern District
of Texas recently rejected the exact same arguments advanced by you. *See Connecticut General
Life Insurance Company v. Texas Spine and Joint Hospital*, No. 14-cv-00765, Dkt. 22, Order, p.
2 fn. 1 (E.D.TX September 10, 2015)(holding that "[t]he Fifth Circuit did not, however, reach
the merits of Cigna's interpretation of the plans."). Cigna disagrees with and rejects your
various spurious assertions, and reserves the right to discuss and comment more fully upon the
*North Cypress* decision at the proper time and in the proper forum.

Cigna has been clear and transparent about its position regarding the waiver of Cigna
customers' cost share obligation. On July 19, 2013, Cigna informed TPSC that it was
conducting an audit and requested certain patient records. *See, e.g.,* Appeal of L.C., dated March
31, 2014, Enclosure 9, and Appeal of J.F., dated April 1, 2014, Enclosure 9, the entire contents
of each appeal being fully incorporated by reference herein. TPSC refused to provide the
requested information. *Id.* at Enclosure 10. On September 17, 2013, Cigna sent TPSC a second
letter in which we stressed the importance of the requested information, re-iterated our request
for this information, and put TPSC on notice of what actions Cigna could take if you refused to

Jeanine Navarro
Page 4

provide the requested information. *Id.* at Enclosure 11. TPSC again refused to provide the requested information. *Id.* at Enclosure 12. On October 1, 2013, Cigna informed TPSC of its audit findings and disclosed how it intended to process TPSC claims unless TPSC changed its billing practices. *Id.* at Enclosure 13. To date, TPSC has refused to modify its billing practices despite the repeated notice provided by Cigna.

In the absence of proof of a Cigna customer's cost share payment, Cigna issued an EOB to the Cigna customer that disclosed the reason for its claim denial at Note A and informed the Cigna customer of his or her appeal rights. In addition, Cigna sent an EOP to TPSC that similarly disclosed the reason for its claim denial at Note A and outlined Cigna's administrative appeal process. *See* Exhibit 2. Consistent with and in conjunction with Cigna's September 17, 2013 and October 1, 2013 letters to TPSC, the EOP similarly informs TPSC at Note A that Cigna needs proof of this Cigna customer's cost share payment(s) in order to establish due proof of loss. If TPSC appeals a claims denial on behalf of a Cigna customer, and TPSC again has not provided proof of a Cigna customer's cost share payment, Cigna will issue an appeal denial letter that will disclose the reason for its appeal denial, quote the relevant plan provision upon which Cigna relied, and describe the administrative appeal process for a second level appeal, if applicable. Finally, if TPSC files a second level appeal on behalf of a Cigna customer, and TPSC again has not provided proof of a Cigna customer's cost share payment, Cigna will issue a second level appeal denial letter that will disclose the reason for its second level appeal denial and again quote the relevant plan provision upon which Cigna relied.

While you state that the Cigna customer has been obligated to pay, you deliberately withheld material documents from the administrative record, effectively attempting to perpetrate a fraud upon any reviewing court. In fact, TPSC has a Corporate Indigency Policy by which TPSC waives the cost share obligation of Cigna customers. *Id.* at Enclosure 7. TPSC also has a form, captioned "Oprex (Houston) Indigency Policy & Agreement", evidencing TPSC's waiver of the Cigna customer's cost share obligation because the Cigna customer has a middle class income and/or a health benefits plan with a high deductible/co-insurance. *Id.* at Enclosure 5.

In any event, your Financial Policy specifically states, "***Once indigency is determined, collection is no longer undertaken with regard to the patient for the forgiven amount***" as evidenced by Exhibit 3 (emphasis added). Moreover, your Exhibit 3 further confirms that TPSC improperly waives the cost share obligations under the terms of your own Financial Policy because, as noted above, Cigna's health benefits plans expressly prohibit such conduct, and your Financial Policy specifically states that it will not apply if "expressly prohibited by any specific terms of the health plan." Indeed, your Financial Policy specifically admits the Cigna "insurance policy/employee benefits plan is a contract between you and your insurance company/employee benefits plan." Therefore, with full knowledge by your own admission, TPSC specifically and tortuously interferes with that contract. Your decision to waive the Cigna customer's cost share obligation, which your Exhibit 3 specifically refers to as a "waiver," renders your charges non-coverable, and you knew this at the time of your decision to provide medical services to this Cigna customer.

Jeanine Navarro
Page 5

You state variously that Cigna requires TPSC to bill and collect a hundred percent of the unmet deductible and co-insurance amounts at the time that you provide health care services. That statement is incorrect. Cigna has never made such a statement. Instead, Cigna has consistently advised TPSC that TPSC needs to honor Cigna's plan provision as noted above by billing and actually obligating Cigna customers for the charges that you submit to Cigna, and that, given your insistence on waiving cost share, Cigna would pay its proportionate share based upon the submission of proof of cost share payment(s) at the time of claim submission or thereafter. Proof of cost share payments serves as a means of establishing that you bill and actually obligate Cigna customers, thereby potentially rendering charges coverable that ordinarily would not be covered under your practice of cost share waiver.

Alternatively, we have requested proof of the methodology by which you price your claims to Cigna customers and calculate their cost share as determined by you so that Cigna can figure out what your real charges are. TPSC has repeatedly refused to provide that information, rendering Cigna unable to process your claims absent the required proof of loss documentation because, by way of example, the Plan has no obligation to pay where TPSC has waived the full, out-of-network deductible of the Cigna customer. Indeed, TPSC is bound by the terms and conditions of the medical plans whose benefits you took under assignment.

Finally, assuming *arguendo* the validity of the Cigna customer's assignment, the Cigna client possesses the right to invoke any anti-assignment language in its plan. The Ninth Circuit in *Spinedex*, a decision quoted and adopted by you repeatedly, recently reaffirmed a plan's contractual right to invoke its anti-assignment language, and the language with this client's Plan is unambiguous in that regard. Accordingly, Cigna and its client hereby invoke the anti-assignment language in their respective plan and object to the assignment of any rights or benefits from the Cigna customer to any individual medical provider, and from any individual medical provider to any other entity.

Despite your assertions otherwise, it appears your assignment is not valid on its face. Your assignment flows from the Cigna customer to an entity that is not a healthcare provider. Various federal circuit courts grant standing "only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Simon v. General Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001); *see also Misic v. Bldg. Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1379 (9th Cir. 1986) (holding assignee of ERISA beneficiaries had standing to assert ERISA claim for underpayment, where assignee "provided dental services to beneficiaries . . . who in return assigned [to assignee] their rights of reimbursement"). The entity listed on Exhibit 2 did not provide healthcare services to the Cigna customer, and *North Cypress* and *Sonic* are distinguishable because those cases involved providers of actual healthcare services.

Finally, regarding your requests for plan-related documents from the Cigna client, ERISA's general disclosure requirements under Section 101 of ERISA applies only to participants or beneficiaries, and TPSC is neither. There has been no assignment of the general ERISA section 101 rights. To the extent that Cigna elects to provide certain information in response to this

Jeanine Navarro
Page 6

letter or any other letter issued by you, such action does not constitute a voluntary waiver of
Cigna's or any of its client's anti-assignment rights, nor may you attribute to Cigna's client
Cigna's decision to provide certain information to you.  Cigna and its client specifically preserve
their right to invoke the anti-assignment language for this employee or any other employee in
the future as well as the right to advance the afore-mentioned arguments in the future.

## Violations of Texas Statutory Law

TPSC's billing practices violate Texas law.  Section 1204.055 of the Texas Insurance Code
mandates that "[a] physician or other health care provider may not waive a deductible or
copayment by the acceptance of an assignment."  TPSC routinely waives Cigna customers' out-
of-network cost share responsibility in exchange for accepting the patients' assignment of
benefits under which TPSC then bills Cigna inflated amounts that fail to reveal that the Cigna
customers' cost share has been waived.  TPSC's waiver of Cigna customers' cost share
responsibility is a violation of Section 1204.055 and is a mechanism of committing fraud
because TPSC never intends to collect from the Cigna customers their cost share obligations and
fully intends for Cigna to base its reimbursements on grossly inflated charges.

In addition, TPSC has violated Section 101.203 of the Texas Occupations Code, which
mandates that "[a] health care professional may not violate Section 311.0025, Health and Safety
Code."  Section 311.0025(a) consists of the following prohibition:

> (a) A hospital, treatment facility, mental health facility, or health care
> professional may not submit to a patient or a third party payor a bill for a
> treatment that the hospital, facility, or professional knows was not provided or
> knows was improper, unreasonable, or medically or clinically unnecessary.

TPSC submitted charges for medical treatment that it knew were improper or unreasonable and
violated Section 101.203 because TPSC knew that its charges were grossly inflated to cover the
costs of its practice of cost share waiver.

Section 105.002 of the Texas Occupations Code concerns unprofessional conduct.  It prohibits a
health care provider, in connection with the provider's professional activities, from knowingly
presenting (or causing to be presented) a false or fraudulent claim for the payment of a loss
under an insurance policy.  It further prohibits a health care provider, in connection with its
professional services, from knowingly preparing, making, or subscribing to any writing, with
the intent to present or use the writing, or allow it to be presented or used, in support of a false
or fraudulent claim under an insurance policy.

TPSC has produced, or cause to be produced, various reports, itemized billing statements and
UB-04/CMS-1450 forms to Cigna seeking payment for its services at fees far higher than the
reasonable charges for the same services in the relevant market.  TPSC also knew that the billed
amounts were false charges because it never intended to collect the Cigna customers' cost share
responsibility for those billed amounts.  TPSC knew that these requests for reimbursement
included false and inflated charges for treatment and services that were not reasonable.  TPSC

Jeanine Navarro
Page 7

also knew that these billing forms would be presented to Cigna in regard to claims for benefits under Cigna-insured and employer-funded healthcare plans.

Finally, Cigna believes such conduct constitutes insurance fraud under Section 35.02 of the Texas Penal Code for the reasons cited above.

**Your Request for Plan Documents**

Turning to your request for a copy of the Plan's summary plan description or any other plan documents, I have provided a copy of the applicable Summary Plan Description on the enclosed CD as a courtesy to the client. Since TPSC has not fully exhausted its administrative appeals, we cannot provide you a copy of the complete administrative file. Nevertheless, you already possess or will possess copies of your claim; your various internal documents, such as your Corporate Indigency Policy, that you refuse to provide to Cigna; the Explanations of Benefits and Payment to Provider; the correspondence between Cigna and TPSC; and the Summary Plan Description. The Plan Administrator can address your request for the various plan documents to which you may or may not be entitled. You can access the most recently filed Form 5500 at the U.S. Department of Labor's website, which I have provided you in previous correspondence.

Regarding your other document requests identified as Items 6 through 10, you have not identified any statutory or regulatory authority that would warrant production of these documents. First, your document requests are excessive and overbroad because the Department of Labor "'has made clear that the disclosure requirement is limited to materials specifically generated in connection with a particular adverse benefit determination.'" *Goble v. Liberty Life Assur. Co.*, 2013 U.S. Dist. LEXIS 147272 at *26 (D.NJ 2013)(quoting *Brooks v. Metro. Life Ins. Co.*, 526 F. Supp. 2d 534, 238 (D. Md. 2007)). Second, your document requests are not "relevant" because Cigna denied the claim at issue in whole or in part because of your practice of cost share waiver, not due to Cigna's reliance upon publications, databases or other records regarding usual and customary rates and charges. Similarly, Cigna did not rely upon the ASO agreement, trust accounts, custodial statements, or any of the other documents requested by you in Items 6 through 10 to make its claim determination.

**Cigna's Request for Additional Documents**

A review of TPSC's documents and interviews with Cigna customers has revealed that TPSC engages in a dual pricing scheme. Accordingly, in addition to our request for proof of the Cigna customer's cost share payment, Cigna demands that you provide any and all documentation relating to TPSC's internal pricing of this claim and calculation of the Cigna customer's cost share obligation, including the financial indigency policy that TPSC has in place. Said documents should include, but are not limited to, any Medicare-based methodology or any other methodology used to calculate your prices, any dual pricing schedules or methodologies, and TPSC's calculation or waiver of the cost share obligation due and owing by the Cigna customer. We look forward to the receipt of the requested information.

Jeanine Navarro
Page 8

## Conclusion

Cigna expects TPSC to abandon its practice of waiving any portion of the cost share obligations of Cigna customers. As this letter makes clear, you do not have the unilateral authority to do so, and this business practice directly impacts whether a coverable loss exists on any claim submitted by TPSC. You will need to follow the procedures outlined in our February 27th letter in order to have your claims reimbursed.

Indeed, you have an obligation under the State of Texas' consumer protection and civil statutes to inform each and every Cigna customer that your billing practices jeopardize their coverage, but TPSC promises its patients that they have the "right to information on the following: . . . fees for services; payment policies; . . ." Therefore, under your own "Patient Bill of Rights," TPSC has an obligation to inform each and every Cigna customer that TPSC's waiver of his or her cost share obligation jeopardizes their coverage and potentially renders TPSC's charges non-coverable. TPSC violates its own "Patient Bill of Rights" whenever it fails to provide this material information.

Finally, in addition to all previous disclaimers, this letter confirms once again that a request for benefits information, pre-authorization or pre-certification is not a promise or guarantee of coverage or payment, and that Cigna representatives who respond to such requests do not have authority to bind Cigna to pay at any particular rate or amount. Moreover, all benefits information calls and the information provided therein are subject to all plan provisions, including eligibility requirements, exclusions, limitations and state mandates, and we expect you to honor and adhere to the terms and conditions of our benefits plans, including those provisions discussed in detail in this letter.

To be clear, nothing in this letter should be construed to be a review or determination of any claim under 29 CFR § 2560.503-1. Instead, this letter responds to various inaccurate factual and legal assertions made in your letter. Nevertheless, the information contained herein should be considered part of the administrative record. Cigna also fully reincorporates by reference its prior responses to TPSC.

Sincerely,

*/s/ William M. Welch II*
William M. Welch II
Associate Chief Counsel

Exhibit 4



RECEIVED   MAY 0 2 2016

www.mazconlaw.com

Employee Benefits
Executive Compensation
ERISA Litigation
Employment Counseling
Employment Litigation

Emily E. Friedman
efriedman@mazconlaw.com

Direct Dial:   404.888.8871
Facsimile:    404.926.2971

April 27, 2016

Jeanine Navarro, Esq.
Legal Counsel
Town Park Surgery Center
11233 Shadow Creek Parkway, Suite 313
Pearland, TX 77584

Re:   Sarah Anderson; DOS 4/10/15

Dear Ms. Navarro:

We are legal counsel to the HCA Health and Welfare Benefits Plan (the "Plan"). We are writing in response to your letter dated March 30, 2016, seeking documents on behalf of Ms. Sarah Anderson as well as a "Level 2 appeal." A copy of your letter is enclosed for reference.

In response to your request for documents, we enclose the following:

- A copy of the Plan document effective January 1, 2010, and Plan amendments.

- The Plan summary plan description ("SPD"), effective February 1, 2011.

- The summaries of material modifications to the 2011 SPD.

- The most recent Plan SPD, effective January 2016.

- The 2014 Form 5500 for the Plan, which is the most recent Form 5500 for the Plan.

With respect to your request for the "claim file and administrative record," the Plan has delegated full discretionary authority to make initial benefit determinations to its claims administrator, Cigna. As the claims administrator, Cigna (not the Plan) maintains these documents. It appears that you sent a copy of your March 30 correspondence to Cigna, and so you should receive a response directly from Cigna.

Please let us know why you require the administrative services agreement. The benefits available under the Plan, including benefits for services received out-of-network, are fully described in the enclosed documents.

You have labeled your March 30 correspondence as a "Level 2 appeal." However, no appeal to the Plan Administrator is allowed until you have filed a written appeal of the initial adverse benefit determination with the Plan's claims administrator, Cigna. There is no indication

Jeanine Navarro, Esq.
April 27, 2016
Page 2

---

from your correspondence that you have complied with the Plan's requirement to submit all first level appeals to Cigna. You must fully exhaust the first level appeal procedure before seeking to submit a second level appeal to the Plan Administrator.

To the extent you have exhausted the first level appeals process with Cigna for your purported claim, you may submit a second level appeal to the Benefit Appeals Committee (the "Committee") in accordance with the claims procedures set forth in the enclosed SPDs. Please note, however, that your March 30 correspondence does not constitute a proper second level appeal under the Plan (and will not be treated as such) because it is missing certain necessary information required by the Plan. More specifically, the SPDs provide that all second level appeals must be accompanied by the following:

1. A copy of the Explanation of Benefits (EOB) for the disputed claim;

2. A copy of the first appeal letter to the claims administrator (Cigna);

3. A copy of the denial letter from the claims administrator (Cigna);

4. An explanation which describes the basis of your second level appeal;

5. Your name and address; and

6. Any additional information or documentation to support your appeal.

You did not submit items 2 and 3 (above) with your correspondence. You must submit the missing documentation and information before any purported appeal will be considered by the Committee.

The Plan and the Committee do not waive and expressly reserve all rights with respect to this matter, including the right to adjudicate (and if appropriate deny) any properly submitted second level appeal, the right to disagree with your characterization of the law (including the scope of documents subject to ERISA's disclosure requirements), and the right to dispute the other assertions contained in your letter. We will respond to your various other claims and arguments if and when it becomes necessary.

Please contact me if you have questions or require further assistance.

Sincerely,

Emily E. Friedman

EEF/tjt
Enclosures
4850-5594-3728, v. 1

Exhibit 5

RECEIVED  JUN 1 3 2016

# HCA

One Park Plaza
Nashville, TN
37203

June 3, 2016

Jeanine Navarro, Esq.
Town Park Surgery Center
Corporate Office
11233 Shadow Creek Parkway
Suite 313
Pearland, TX 77584

Re: Benefit Appeal for Rose C. Nwachukwu
DOS: 03/01/2016

Dear Ms. Navarro:

We write in response to your letter dated April 27, 2016, seeking a second level appeal of Cigna's decision to deny the benefit claim submitted on behalf of Rose C. Nwachukwu. The appeal seeks reimbursement for out-of-network services provided by Town Park Surgery Center ("TPSC") on March 1, 2016.

The Benefits Appeals Committee (the "Committee") has carefully considered and reviewed all of the materials submitted by you as well as those documents gathered by the Committee that the Committee deemed relevant to the instant claim appeal. The Committee also has applied the terms of the Plan that are relevant to the claim. For the reasons stated below, the Committee denies your appeal.

The Committee has determined that TPSC does not have the proper authority to assert a claim appeal on behalf of Ms. Nwachukwu. The Plan contains an unambiguous anti-assignment provision, which prohibits the assignment of any rights or benefits under the Plan. Specifically, the Plan's summary plan description ("SPD") provides:

**Assignment of Benefits**
No benefit under the medical benefits portion of this Plan shall be subject to alienation, sale, transfer, assignment, pledge, or encumbrance or charge, voluntary or involuntary, by operation of law or otherwise, and any attempt at such transaction(s) shall be void. You may not assign your rights, benefits, or any other interest under this Plan to a healthcare provider or any other individual or entity. The applicable Claims Administrator may, however, in its discretion, pay a healthcare provider directly for services rendered to you or your covered dependent(s). The payment of benefits directly to a healthcare provider, if any, will be done as a convenience to you and your covered dependent(s) and will not constitute an assignment of rights, benefits or any other interest under the Plan or a waiver of this anti-assignment provision.

1

SPD for HCA Benefits Plans, effective January 2016, at p. 50.

Even assuming the Plan permitted the assignment of rights, benefits or any other interest under the Plan to a healthcare provider (which it does not), the "assignment" you submitted to the Committee conveys the right to pursue benefits on behalf of Ms. Nwachukwu to "Oprex (Houston)" – not TPSC. In short, TPSC has not provided any evidence demonstrating it has the proper legal authority to pursue the instant claim appeal.

Moreover, even if the Committee were to determine that TPSC has the proper authority to submit an appeal on behalf of Ms. Nwachukwu, the appeal still would be denied because the services provided are excluded from coverage under the terms of the Plan.

Specifically, the Plan excludes from coverage any "charges that the covered individual is not legally obligated to pay." SPD for HCA Benefits Plans, effective January 2016, at p. 37. It appears that TPSC's regular business practice is to waive the co-payment obligations of all of its patients by having patients execute a "Corporate Indigency Policy" declaring patients "financially indigent" to pay for billed charges. On May 16, 2016, the Committee requested additional details from TPSC about its practices with respect to Ms. Nwachukwu, including whether Ms. Nwachukwu signed TPSC's "Corporate Indigency Policy" or whether TPSC otherwise waived Ms. Nwachukwu's payment obligations under the Plan. TPSC did not respond to the Committee's inquiry. Thus, there is no evidence to support the conclusion that the TPSC departed from its regular "fee forgiving" practice with respect to Ms. Nwachukwu.

You argue in your appeal that Ms. Nwachukwu remains obligated to pay for billed charges because two forms she signed – the purported "assignment" and the Financial Policy – contain acknowledgments that Ms. Nwachukwu may be personally responsible for any account balances regardless of "any applicable insurance or benefit payments." As an initial matter, however, there is no evidence in the record demonstrating that the forms apply to TPSC. Both forms identify Oprex Houston (not TPSC) as the surgical care facility.

Regardless, even assuming the forms applied to TPSC, the Financial Policy specifically contemplates "fee-forgiveness" in the form of waivers of "cost-sharing amounts, deductibles, co-insurance and co-pay" based on a finding of financial indigency. Your April 27 letter only selectively quotes from the Financial Policy which provides that a patient will be personally responsible for his or her account balance "__*unless*__ [the patient is] eligible for discounts under our indigency policy predetermined before the services are rendered." As discussed above, the Committee has reasonably determined that TPSC declared Ms. Nwachukwu "financially indigent" and waived all of her payment obligations under the Plan. There is no evidence indicating that Ms. Nwachukwu remains legally obligated to pay for any of TPSC's charges.[1]

In addition, no benefits are payable under the Plan until a participant or beneficiary has satisfied his or her deductible. *See* SPD for HCA Benefits Plans, effective January 2016, at p. 35 ("[t]he annual deductible is the amount you pay under the HCA Well Care Program before

---

[1] In its May 16, 2016 letter to you, the Committee also inquired whether TPSC has billed or collected payment from Ms. Nwachukwu for services rendered. The Committee received no response to its request for information.

2

the plan begins to pay benefits for some covered medical expenses, such as certain hospital expenses, office visits and non-network physician services"); *see also* p. 172 (defining "deductible" as "[t]he amount you pay toward covered expenses each year before the plan begins paying benefits."). As discussed above, the evidence currently in the administrative record supports the conclusion that TPSC waived Ms. Nwachukwu's deductible obligations, consistent with its regular business practices. Thus, the Plan has no obligation to pay the instant claim.

Finally, please be advised that the Plan only provides for payment of 25% of the allowable amount for services rendered by out-of-network facilities, after the deductible has been satisfied. Under the terms of the Plan, the participant is required to pay the remaining 75% coinsurance for the out-of-network services. *See* SPD for HCA Benefits Plans, effective January 2016, at pp. 25-26. Thus, even if the claim were payable (which it is not), the Plan would only reimburse the claim at 25% of the allowable amount, consistent with Plan requirements.

In accordance with ERISA's requirements, the Committee has based this decision on the terms and requirements of the Plan, documents and information gathered by the Committee, and all applicable facts and evidence you provided to the Committee.

You are entitled to receive, upon request, reasonable access to and free copies of all documents, records and other information relevant to the instant claim appeal. Your April 27 letter appears to request this documentation. The Committee will therefore provide you with copies of the "administrative record" for this appeal under separate cover, in accordance with ERISA's claims procedure requirements.

Your April 27 letter also requests numerous other categories of documents that fall outside the scope of disclosures required by the regulation you cite, 29 C.F.R. § 2560.503-1(m)(8). Moreover, even assuming these additional categories of documents were "relevant" to the instant claim (which they are not) – the alleged failure to produce them does not (as you contend) subject the Plan Administrator to statutory penalties pursuant to ERISA § 502(c), 29 U.S.C. §1132(c). As you know, the Plan already provided you with copies of applicable Plan documents on April 1, 2016.

This letter constitutes the final benefit determination under the Plan's internal claims procedures. All decisions of the Committee are final and binding.

If you are still dissatisfied with this determination, you also have a right to bring a civil action under Section 502(a) of ERISA. However, no legal action may be filed more than one year after the date of this letter. Also, if this appeal was submitted by the participant's provider without the participant's authorization, the participant may resubmit the appeal to the Benefit Appeals Committee within 30 days. You may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office.

Respectfully,

Benefit Appeals Committee

cc:    Cigna
       Rose C. Nwachukwu, 9347 Floral Crest Drive, Houston, TX 77083