## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

TRUE VIEW SURGERY CENTER ONE,
L.P., *et al.*,

       PLAINTIFFS,

v.

MILA NATIONAL HEALTH PLAN, *et al.*,

       DEFENDANTS.

CIVIL NO. 3:17-cv-00177-AVC

May 26, 2017

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Defendants in this matter are over one hundred employer-sponsored health benefits plans and over one hundred individuals alleged to be the respective plan administrators. This motion to dismiss is filed on behalf of those defendants represented by the undersigned counsel, who are listed below counsel's names at the end of this memorandum.[1]

Plaintiffs True View Surgery Center One, LP, Oprex Surgery (Houston), LP, LCS Surgical Affiliates, LP, Pasnar Houston, LLC, Oprex Surgery (Beaumont), LP, and Oprex ASC Beaumont, LLC (collectively, "plaintiffs" or "True View") will be familiar to this Court. They are the same group of for-profit, out-of-network medical providers whom Cigna has sued for fraudulently submitting thousands of medical benefits claims. *See Connecticut General Life Insurance Company et al v. True View Surgery Center One, L.P.*, 3:14-cv-01859-AVC (D. Conn.) (hereafter, the "*Cigna* case"). Cigna serves or served as the claims administrator for the health benefits plans named as defendants in this

---

[1] Some defendants represented by separate counsel have filed or will file their own responsive pleadings. And, as explained below, plaintiffs failed to serve a significant number of defendants, some of whom have not appeared in this case as a result of the lack of service.

action, and this case involves the same underlying benefits claims already at issue in the *Cigna* case. Indeed, the instant lawsuit is one of several repetitive actions that plaintiffs filed in Texas after the *Cigna* case commenced, all of which have been transferred here because of their substantial overlap with the original *Cigna* case and each other. This case marks yet another episode in the plaintiffs' efforts to avoid and delay litigating its dispute with Cigna—which, notably, is *not* named in the instant action.

Beyond the administrative and procedural difficulties plaintiffs have imposed on the parties and the Court, there are myriad problems with plaintiffs' case which warrant dismissal:

- Although the instant action has been pending for nearly a year, plaintiffs have failed to serve many defendants. And even as to those defendants that have been served, plaintiffs failed to effectuate service in a timely manner as required by Fed. R. Civ. P. 4(m). Accordingly, the claims against the vast majority of defendants should be dismissed for lack of proper service.

- Plaintiffs' repeated allegations that the individuals named as parties were the "plan administrators" are plainly contradicted by the applicable plan documents. For this reason, plaintiffs' claims against nearly all of the named "plan administrators" should be dismissed.

- A number of defendants' ERISA plans contain broad anti-assignment language that bars the assignment of benefits to third-parties such as plaintiffs. These anti-assignment provisions are enforceable and preclude plaintiffs' claims against these plans. Accordingly, all of the claims against these plans and their purported administrators should be dismissed for lack of standing.

- As to the remaining plans, plaintiffs can maintain *only* a claim for payment of benefits under ERISA § 502(a)(1)(B). Plaintiffs lack standing as a matter of law to bring their various other non-benefits claims against any of the defendants. Moreover, even if this

legal bar somehow could be overcome, plaintiffs have not alleged a sufficient assignment of rights that would allow them to assert non-benefits claims—such as the removal of plan administrators or failure to provide governance documents—that are unrelated to their claims for payment. Accordingly, all claims except the § 502(a)(1)(B) claim for payment of benefits should be dismissed as to all defendants.

- Moreover and in addition, plaintiffs' equitable relief claims under ERISA § 502(a)(3) are duplicative of their benefits claim under § 502(a)(1)(B). Because the latter section provides an adequate basis for relief, the § 502(a)(3) claims are not viable as a matter of law and should be dismissed as to all defendants.

- Finally, plaintiffs' claim for statutory penalties for the supposed failure to provide requested documents can *only* be maintained against plan administrators—not the plans themselves—and, as already noted, plaintiffs have failed to name the proper administrators in nearly every instance. Even in regard to the few administrators who were properly identified, and even if plaintiffs were to have standing, plaintiffs could only seek damages for the administrators' supposed failure to produce those documents specifically enumerated by statute, not for all the various other documents that they may have asked for but were not legally entitled to. Accordingly, the claims for statutory penalties should be dismissed as to all defendants.

For all these reasons, this case must be dismissed in substantial part. Indeed, the one and only claim that can proceed beyond the pleadings stage as a matter of law is a claim against those defendants that waived service, for the payment of benefits pursuant to ERISA § 502(a)(1)(B).

## BACKGROUND

### A. ERISA Health Benefits Plans

As plaintiffs' complaint observes: "Throughout America, millions of individuals obtain health insurance coverage through their employer or through a family member's employer." Compl. (Doc. #1) at ¶244. Sometimes these plans operate under a "fully-insured" model, under which "the employer and/or employees pay premiums to a third party commercial insurance company, and the medical costs of the employees are paid using the insurance company's funds." Other employers utilize a "self-funded" model, under which "the employer assumes the risk for payment of the medical claims." Under the latter model, the employer-sponsored plan actually pays the benefits claim, but the employer often "contracts with a third party commercial insurance company to oversee the claims processing and other administrative services." *Id.* at ¶247. Whether they are "fully-insured" or "self-funded," these employer-sponsored health benefits plans are typically governed and regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), unless they fall into a particular exemption. *Id.* at ¶246. Pursuant to ERISA, plans are governed by a written plan document (often termed a "summary plan description" or "SPD") that must contain certain information. *See id.*

Non-party Cigna is, among other things, the claims administrator for various ERISA benefits plans—both "fully-insured" and "self-funded." As part of this arrangement, the plan administrator of the ERISA benefits plan delegates to Cigna the discretionary authority to interpret and apply plan terms, to determine whether a person is entitled to benefits under the plan, and to determine the amount of any and all benefits payments. *See* 3:14-cv-01859, Doc. #34 (Compl.) at ¶¶34, 38. Health insurance companies like Cigna maintain networks of healthcare providers who agree to accept fixed rates for their services in exchange for certain benefits, such as access to the insurer's plan members as a source of payment. *Id.* at ¶3. But many of Cigna's plans—including the plans at issue in this case—also permit plan members to seek medical care from other providers, *i.e.*, "out-of-network" providers,

despite the fact that these providers generally charge much higher rates than those agreed to by in-network providers. *Id.* ¶¶4, 50. To control costs and keep healthcare affordable, Cigna incentivizes its plan members to seek in-network care where it is available. Patients must pay higher cost-share obligations—such as deductibles, copayments, and coinsurance—for out-of-network care. *Id.* ¶6, 62.

## B. The *Cigna* Case

On December 11, 2014, Cigna initiated the *Cigna* case in the District of Connecticut, alleging fraud on the part of True View, a group of "out-of-network" Texas medical providers.[2] Cigna alleges that True View devised and implemented a scheme to defraud Cigna and Cigna administered plans by waiving plan members' cost-share obligations in violation of plan terms and state law, submitting claims for payment that did not reflect the true value of the services provided, and by disclosing one set of fees to plan members but using a different set of inflated fees when billing the plans. *See generally* Compl. in *Cigna* Case, Case No.14-cv-01859, Doc. #34 at ¶¶1–12. Once this conduct was discovered, Cigna—acting in its role as claims administrator for hundreds of plans—began denying the benefits claims submitted by True View. In the *Cigna* case, Cigna (on behalf of over hundreds of benefits plans that it administers) seeks to recoup the payments that True View fraudulently obtained and a declaration that Cigna does not have to pay the fraudulent claims that it has denied. The Court has limited Cigna's ability to assert claims under ERISA, based on the preclusive effect of a ruling in another case (now on appeal). Cigna's fraud claims and other claims against True View remain pending, *see* Case No. 3:14-cv-01859 at Doc. #231, and the parties are currently engaged in discovery.

## C. The Instant Case

But True View was not content to defend the validity of its benefits claims in one manageable lawsuit. In October and November 2015, True View initiated seven separate cases in the Southern

---

[2] All the plaintiffs in this case were previously named, together with related entity Altus Healthcare Management, LP, as defendants in the *Cigna* case.

District of Texas against various Cigna-administered plans concerning benefits claims already at issue in the *Cigna* case. In February 2016, each of those cases was transferred to the District of Connecticut and consolidated with the *Cigna* case.[3] Then, on June 9, 2016, True View filed this lawsuit in the Southern District of Texas. *See* Doc. #1 (Complaint). At issue in this newest lawsuit are the same benefits claims already at issue in the *Cigna* case—claims that were submitted by True View and denied by Cigna. However, instead of suing Cigna—the claims administrator who made the decision to deny the benefits claims—True View has sued the Cigna-administered plans, along with individuals who purportedly were the plans' administrators (but in most instances were *not*). And, instead of just seeking the payment of unpaid benefits claims, True View has alleged a bizarre and incomprehensible embezzlement scheme. Notwithstanding these differences, this case—like the seven earlier cases—was transferred to the District of Connecticut on February 6, 2017, due to the "substantial overlap" with the existing consolidated *Cigna* case. *See* Doc. #177 (Order of Transfer).

True View asserts six causes of action:

- Count One (¶¶318–25) – ERISA § 502(a)(2) and (a)(3) Claims for Failure to Comply with Plan Terms: alleging, among other things, that defendants wrongfully failed to pay benefits to True View and failed to provide a "full and fair" review, and seeking at least $11 million in unpaid benefits;

- Count Two (¶¶326–32) – ERISA § 502(a)(3) Claim for Breach of Fiduciary Duty and Co-fiduciary Liability: alleging that the plans/plan administrators breached their fiduciary duties by knowingly permitting Cigna to embezzle plan funds, and seeking monetary, equitable, and injunctive relief;

- Count Three (¶¶333–36) – ERISA § 502(a)(3) Failure to Provide Full and Fair Review: alleging that defendants failed to provide a full and fair review, as required by ERISA;

- Count Four (¶¶337–39) – ERISA § 502(a)(1)(A) and (c)(1)(B) Failure to Provide Requested and Required Documents: alleging that defendants did not provide various documents, and seeking civil penalties pursuant to ERISA;

---

[3] Plaintiffs' history of filing repetitive suits concerning the same benefits claims is chronicled in detail in the motion to enjoin, filed in the *Cigna* case. *See* Case No. 3:14-cv-01859 at Doc. #129.

- Count Five (¶¶340–41) – ERISA § 502(a)(2) Remove Plan Fiduciaries: seeking the removal of defendants as plan administrators; and

- Count Six (¶¶342–43) – Attorney's Fees: seeking attorney's fees and costs.

Each of these claims is faulty, for the reasons discussed below.

## ARGUMENT

The standards governing a Rule 12 motion to dismiss are well known to this Court. As relevant here, a motion to dismiss can be used to challenge "insufficient service of process" (Rule 12(b)(5)), as well as plaintiffs' "failure to state a claim upon which relief can be granted" (Rule 12(b)(6)).

Rule 12(b)(5) "authorizes dismissal of a complaint for insufficient service of process upon motion by a defendant made prior to the defendant's filing an answer." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 594 (E.D.N.Y. 2013). A court "looks to materials outside of the pleadings"—such as the returns of service—"in determining whether service of process has been insufficient." *Keller v. Star Nissan, Inc.*, No. 07CV4551 ENVSMG, 2009 WL 4281038, at *4 (E.D.N.Y. Nov. 30, 2009) (citing *Darden v. DaimlerChrysler N. Am. Holding Corp.,* 191 F.Supp.2d 382, 387 (S.D.N.Y.2002)).

Under Rule 12(b)(6), this Court considers "all 'well-pleaded factual allegations'" and "'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Ordinarily, a court considers only the complaint itself when resolving a Rule 12(b)(6) motion. However, it is well established that a court can consider documents outside the complaint on a motion to dismiss where the outside material is "incorporated in [the complaint] by reference" or "where the complaint relies heavily upon [the outside document's] terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). The plan terms easily satisfy this standard here. Indeed, plaintiffs' entitlement to relief depends on the terms of plan documents, and plaintiffs' complaint discusses the plans and plan terms extensively. *See,*

*e.g.*, Compl. at ¶¶255–57. Moreover, plaintiffs' claims depend on alleged violations of the terms of the plan documents. Accordingly, this Court should consider excerpts from the plan documents when ruling on this motion.

### A. This Court Must Dismiss All Claims Against Defendants That Were Not Served or Were Not Timely Served.

This case should be dismissed as to the great majority of defendants due to plaintiffs' failure to effectuate service in accordance with the Federal Rules of Civil Procedure. *See* Exhibit A (summarizing waivers and returns of service filed by plaintiffs). Pursuant to Rule 4, a plaintiff must serve each defendant with process or obtain a waiver of service of process. *See* Fed. R. Civ. P. 4(c)–(d). An action is subject to dismissal under Rule 12(b)(5) "if the plaintiff fails to serve a copy of the summons and complaint on the defendant(s) pursuant to Rule 4." *Barclay v. Michalsky*, 451 F. Supp. 2d 386, 393 (D. Conn. 2006) (citing *Schaeffer v. Vill. of Ossining*, 58 F.3d 48, 49–50 (2d Cir. 1995)). Moreover, defendants must be served with haste; a plaintiff who wishes to assert a claim cannot wait around indefinitely to serve the defendants. Under Rule 4(m): "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— *must* dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m) (emphasis added). In assessing whether service was effectuated properly in accordance with the Federal Rules, it is the plaintiffs—not the defendants—who have the burden of proof. As the Second Circuit has put it: "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 Fed. Appx. 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)). In this district, a plaintiff demonstrates that he has complied with the service-of-

process requirements—whether by obtaining a waiver or serving process—by filing proof of service or proof of waiver on the docket. *See* D. Conn. L. Civ. R. 4(d).[4]

The history of service-of-process in this case stretches back nearly a year. In summary: While this case was pending in Texas, plaintiffs were required pursuant to Rule 4(m) to serve all defendants by September 7, 2016, given the June 9, 2016 filing date. Although plaintiffs obtained some waivers of service by the September 7 deadline, they did not serve process on any defendants by that date. *See* Exhibit A. Moreover, plaintiffs did not even bother filing a motion to extend the deadline for service until October 20, 2016, well after the deadline for service had passed. *See* Doc. #103. And that motion sought an extension of time to serve the remaining defendants only until November 21, 2016. *Id.* at 1. Ultimately, the Texas court transferred the case without ruling on plaintiffs' motion to extend time to serve.

Upon transfer to Connecticut, this Court entered an order stating—in all capital letters—that "ANY MOTIONS PENDING AT THE TIME OF TRANSFER MUST BE REFILED IN OUR DISTRICT." Doc. #185. Yet plaintiffs did not re-file their motion for an extension of time to serve the remaining defendants, although they did re-file other motions (indicating that they were well aware of the requirement to re-file motions in this District). *See, e.g.,* Docs. #245, 246, 247. The record concerning service-of-process also remained deficient, as plaintiffs had mostly failed to file waivers and returns of service in accordance with the Local Rules. Defendants asked the Court to require plaintiffs to file proof that they had obtained waivers of service or actually served the defendants by a certain date, and the deadline for filing proof of service was ultimately set for May 5, 2017. *See* Doc. #507.

---

[4] This rule provides in its entirety: "The plaintiff shall file proof of service complying with Fed. R. Civ. P. 4(l), or proof of waiver of service, within 7 days after plaintiff's receipt of such proof. If the complaint will not be served within 90 days after it is filed, the plaintiff shall file within that time a motion for additional time on good cause shown or, if no extension is required, a statement of explanation." D. Conn. L. Civ. R. 4(d).

Notably, however, plaintiffs continued to file returns of service even after that date passed. *See* Docs. #512–536 (returns of service filed after May 5).

Once the returns of service were docketed, it became clear that plaintiffs' service-of-process was woefully deficient. Plaintiffs obtained waivers of service only as to 25 parties (out of over 200). *See* Exhibit A. *Plaintiffs failed to properly serve each and every other defendant.* For many defendants, True View failed to return any proof of service altogether: *there are no waivers or returns docketed for 54 defendants who have apparently never been served at all. See* Exhibit A. *All of the remaining 130 defendants were served long after the time period for service elapsed on September 7, 2016.* A quick review of Exhibit A shows that plaintiffs *started* serving defendants in December 2016—three months after the deadline. And many defendants were served even later in April and May 2017—some seven or eight months after the deadline for service under Rule 4(m) and nearly a year after the case was filed. The Federal Rules do not permit plaintiffs' dilatory behavior, and require dismissal.

This Court should not allow plaintiffs a *nunc pro tunc* extension of time to serve process. To begin, plaintiffs haven't asked for such relief. Despite being aware of the problems with service-of-process, plaintiffs have never filed a motion that would render timely any of their attempts at service. The one motion for extension of time that was filed (which the Texas court declined to address) sought an extension through October 20, 2016. *See* Doc. #103. But, aside from the early batch of waivers, plaintiffs did not serve any defendants until much later; that is, not until December 2016. *See* Exhibit A. There can be no reasonable explanation for this failure.

Suffice it to say, plaintiffs have not shown "good cause" for their failure to timely serve defendants, and given the extraordinary amount of time that has elapsed since filing, there can be none. The "good cause" inquiry turns on whether "exceptional circumstances beyond [the plaintiff's] control" impeded service of process, notwithstanding plaintiffs' "diligent attempts." *Spinale v. United States*, 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005), *aff'd*, 352 Fed. Appx. 599 (2d Cir. 2009).

"Inadvertence, mistake, or neglect does not constitute good cause for an extension." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 322 (S.D.N.Y. 2016). Here, plaintiffs have no excuse for failing to serve defendants in accordance with the rules, including the pendency of the motion to transfer while the case remained in Texas—whether the motion to transfer was to be granted or not, the plaintiffs had an obligation to pursue their case in earnest or to abandon it. "The fact that Defendants have actual notice of the action does not alter this conclusion. 'Neither actual notice nor absence of prejudice to the defendant provides an adequate basis for excusing noncompliance with Rule 4(m), unless plaintiff has diligently attempted to complete service.'" *Id.* at 323 (quoting *Mused v. U.S. Dep't of Agric. Food & Nutrition Serv.*, 169 F.R.D. 28, 34 (W.D.N.Y.1996)); *see also Sartor v. Toussaint*, 70 Fed. Appx. 11, 13 (2d Cir.2002) (noting that "actual notice of suit [cannot] cure a failure to comply with the statutory requirements for serving process.").

Nor should this court grant a discretionary extension. To obtain a discretionary extension absent a showing of good cause, "the plaintiff must ordinarily advance some colorable excuse for neglect." *Zapata v. City of N.Y.*, 502 F.3d 192, 198 (2d Cir. 2007). Plaintiffs in this case have no excuse for their tardy service and lack of service. Plaintiffs made a conscious decision to initiate their own lawsuit against over two hundred defendants in Texas, even though a substantially related case was already pending before this Court, and even though seven other cases they filed in Texas had been transferred to this Court. Plaintiffs then made a conscious decision not to serve any defendants until long after the deadline for service had passed, and not to serve many defendants at all. Pursuant to Rule 4(m), this case should be dismissed as to all defendants who did not sign a waiver of service.

## B.  All Claims Against the Wrongly Named Plan Administrators Must Be Dismissed.

Along with each ERISA plan named as a defendant, plaintiffs have also sued individuals who are alleged to be the plan administrators for each plan. For those defendants represented by the undersigned counsel, these allegations about plan administrators are simply wrong, with only two

exceptions. Attached as Exhibit B is a chart comparing the alleged plan administrator from the complaint with the actual plan administrator named in the relevant plan document(s). Excerpts from the plan document(s) are included as well—specifically, those pages of the governing plan documents that name the plan administrator.[5] As the Court will see from Exhibit B and the excerpts from the plan documents, <u>virtually all of the plan administrators were incorrectly named</u>. Accordingly, all claims against the purported plan administrators (with the exception of Bernadette J. Branosky and Barbara Grigat) should be dismissed.

The law governing plan administrators is straightforward. ERISA defines a plan administrator as follows:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
> (ii) if an administrator is not so designated, the plan sponsor; or
> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary [of Labor] may by regulation prescribe.

29 U.S.C. § 1002(16). The word "person," in turn, is defined broadly to include "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9). The statutory text could not be clearer: "if a plan specifically designates a plan administrator, then that individual or entity is *the* plan administrator for purposes of ERISA." *Crocco v. Xerox Corp.,* 137 F.3d 105, 107 (2d Cir.1998) (emphasis in original). There is no need to engage in a searching analysis about other individuals or entities that may have some administrative or discretionary control. *See, e.g., Krauss v. Oxford Health Plans, Inc.,* 418 F.Supp.2d 416, 434 (S.D.N.Y.2005) ("An entity may

---

[5] The governing plan documents for each ERISA benefit plan can be lengthy—often 60 or more pages, and sometimes much more. To avoid burdening the Court with many thousands of pages of exhibits, defendants have submitted only the relevant pages from the plan documents. Defendants will of course file or provide copies of entire plan documents upon the Court's request. Moreover, defendants reserve the right to submit the entire plan documents or other supporting information in connection with a reply brief if plaintiffs maintain their claims against the wrongly-named plan administrators.

'administer' some elements of a covered Plan . . . without being the plan administrator."), *aff'd,* 517 F.3d 614 (2d Cir. 2008).

Here, plaintiffs repeatedly allege that the named individual defendants are the plan administrators of the respective plans. *See* Doc. #1 (Compl.) ¶¶ 16, 17, and odd numbered paragraphs from 19–241 (purporting to sue named individuals in their "official capacity as Plan Administrator of" each benefit plan); ¶258 (alleging that "[e]ach of the plan administrator Defendants serve as the Plan Administrator for their respective ERISA welfare benefit Plan"). As is clear from Exhibit B and the attached documents, these allegations are false with respect to nearly every plan.[6] For the vast majority of plans, the actual plan administrator (as named in the plan) is the employer/plan sponsor. In a handful of instances, the actual plan administrator (as named in the plan) is a committee established to oversee the plan.

Most troublingly, True View has long been aware of this issue concerning improperly named plan administrators. Attorneys and representatives of several plans have notified True View that individual defendants have been wrongly named, and True View's counsel has even promised in writing to amend the complaint to remove wrongly named administrators. Yet, plaintiffs have done nothing to correct their obvious errors nearly a year after the case was filed.

In view of the actual plan documents naming the correct plan administrators, plaintiffs' allegations in the complaint concerning plan administrators are mere "label[s] and conclusion[s],"

---

[6] We expect that plaintiffs will respond by pointing out that some of these individuals signed each plan's Form 5500 document that was submitted to the Department of Labor. However, the fact that an individual signed the Department of Labor's Form 5500 does not render that individual the plan administrator. Indeed, the Department of Labor's instructions for Form 5500 state that "if the plan administrator is an entity, the electronic signature [on the Form 5500] must be in the name of a person authorized to sign on behalf of the plan administrator." *See* Instructions Form available at https://www.dol.gov/sites/default/files/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500/2016-instructions.pdf. Thus, the fact that an individual signed the Form 5500 does not make that person the plan administrator; rather, it simply means that the person is authorized to sign on behalf of the plan administrator. Notably, the Form 5500s, which are available online, not only identify the authorized signatory, but also the actual plan administrator—thus there is no excuse for plaintiffs' wrongful inclusion of over one hundred individuals in this case.

falling well short of a "well-pleaded fact" under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Plaintiffs' allegations concerning plan administrators are not "plausible," *id.*; in fact, they are outright false. Accordingly, this Court should dismiss all claims against the wrongly named plan administrators.

### C. True View Lacks Standing to Pursue Claims Against Those Plans That Prohibit Assignment.

True View's claims in this lawsuit arise under ERISA § 502(a). But this statute confers standing only upon participants and beneficiaries (§ 502(a)(1)-(3)) and fiduciaries (§ 502(a)(2)-(3)). Plaintiffs are not participants, beneficiaries, or fiduciaries of any of the plans; accordingly, they do not have direct standing to assert any claims under ERISA § 502(a). Instead, plaintiffs claim to have derivative standing, based on the assignments of certain plan rights that plaintiffs allegedly received from plan participants/beneficiaries. *See, e.g.*, Compl. at ¶¶266 – 67, 319, 327. True View cannot rely on these assignments when the assignments are prohibited by the terms of the plan.

"In order for an assignee to prevail on an ERISA claim . . . the assignee must establish the existence of a valid assignment that comports with the terms of the benefits plan." *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*, No. 13CV6551 (DLC), 2016 WL 2939164, at *4 (S.D.N.Y. May 19, 2016). And "[w]here ERISA plan language unambiguously prohibits assignment . . . an attempted assignment will be ineffectual. . . . Thus, 'a healthcare provider who has attempted to obtain an assignment in contravention of a plan's terms is not entitled to recover under ERISA.'" *Id.* (quoting *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 352 (S.D.N.Y. 2013)). Although the Second Circuit has not yet spoken on this issue directly, "[o]ther Circuit courts . . . have concluded that where an ERISA-governed plan contains an unambiguous anti-assignment provision, assignments under that plan are invalid." *Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 118–19 (S.D.N.Y. 2016) (citing cases from the First,

Fifth, Ninth, and Eleventh Circuits). District courts in this Circuit have reached the same conclusion. *See id.* at 119 (citing cases).

Here, a number of the defendant plans include unambiguous anti-assignment provisions in their governing plan documents. For example, the JPMorgan Chase Health & Income Protection Plan for Active Employees states: "Neither you nor JPMorgan Chase can assign, transfer, or attach your benefits, or use them as collateral for a loan. **You may not assign your right to file actions under ERISA regarding the plans**." *See* Exhibit C (emphasis added). The TriMas Corporation Welfare Benefit Plan includes similarly unambiguous language:

> 7.22 **No Assignment of Medical Benefits**
> Neither you, nor your eligible Dependents who are covered under the Plan's Medical Benefits, nor anyone acting on your or their behalf can assign any benefit or monies due under the Plan's Medical Benefits to any person, corporation, or other organization without Plan Administrator's (or its duly authorized delegate's, or if the Medical Benefit is insured, the insurer's) written consent. Any assignment by you will be void. Assignment means the transfer of your rights to the benefits provided by this Plan to another person or organization.

*See id.*

In all, twelve plans represented by the undersigned counsel have broad anti-assignment provisions in their governing plan documents that preclude all of True View's claims. These provisions render void the assignments that True View purports to possess, and therefore preclude all claims against the following plans and alleged plan administrators:

- Caprock Communications Inc. Health and Welfare Benefit Plan and alleged plan administrator Jairaj Thakkar
- Employee Group Health Plan of United Technologies Corporation and alleged plan administrator Frederic Daussan
- Health Care Plan for Hourly Employees (Altria) and alleged plan administrator Barbara Grigat
- Hoerbiger Corporation of America, Inc. Employee Health Plan and alleged plan administrator Bruce Driggett
- The JPMorgan Chase Health & Income Protection Plan for Active Employees and alleged plan administrator Bernadette J. Branosky
- Masterpiece Machine & Manufacturing Employee Health Benefit Plan and alleged plan administrator Michelle Robicheaux
- Pearson Inc. Welfare Benefit Plan and alleged plan administrator Robert B. Arthur

- The Reynolds and Reynolds Company Group Health Benefit Plan and alleged plan administrator Debra Riggsby
- The Western Union Company Health and Welfare Benefit Plan and alleged plan administrator Tim Cinalli
- TriMas Corporation Welfare Benefit Plan and alleged plan administrator Jill Stress
- Waste Management Health and Welfare Benefits Plan and alleged plan administrator Gordon Blasius
- Whataburger Employee Benefit Plan and alleged plan administrator Edward Nelson

Exhibit C reprints the anti-assignment language from each of these plans, and also includes the pages from each plan that contains the anti-assignment language.[7]

True View lacks standing to sue the parties listed above in view of the unambiguous anti-assignment provisions. Accordingly, all claims against these plans and alleged plan administrators must be dismissed.

### D. Plaintiffs Lack Statutory Standing to Raise Claims Beyond those for Payment of Benefits Under ERISA § 502(a)(1)(B).

Even as to those plans that do not prohibit assignment, True View's derivative standing is limited to a claim under ERISA § 502(a)(1)(B) for the payment of benefits. True View lacks standing to pursue the various other non-benefits claims in the complaint (breach of fiduciary duty, removal of plan fiduciaries, right to seek statutory penalties for failure to produce plan documents, etc.) for two reasons. First, as a matter of law, federal courts do not permit health care providers like plaintiffs to raise claims that are not connected with the payment of benefits. Second, even if plaintiffs could raise non-benefits claims as a matter of law, they cannot do so here because the assignments that they allegedly obtained from plan participants/beneficiaries do not convey standing to raise any non-benefits claims. Accordingly, plaintiffs' non-benefits claims must be dismissed.

---

[7] Again, defendants have submitted only the relevant pages from the plan documents. Defendants will file or provide copies of the entire plan documents upon the Court's request. Moreover, defendants reserve the right to submit the entire plan documents or other supporting information in connection with a reply brief if plaintiffs maintain their claims against the plans containing anti-assignment provisions.

As the Second Circuit has explained: derivative standing for healthcare providers is "a narrow exception to the ERISA standing requirements. This narrow exception grants standing only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001). In other words: the health care provider can only obtain standing to sue for the ***payment*** of health insurance benefits. *See, e.g.*, *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) ("We hold that as a matter of federal common law, when a patient assigns payment of insurance benefits to a healthcare provider, that ***provider gains standing to sue for that payment*** under ERISA § 502(a).") (emphasis added). And with good reason. There's a rational justification for permitting the assignment to a health care provider of a beneficiary's claims for the payment of healthcare services rendered. Although ERISA does not expressly allow derivative standing for health care providers, courts have allowed standing in this context based on the notion that "[t]he right to receive benefits would be hollow . . . without enforcement capabilities." *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372. But this logic does not extend to non-benefits claims brought under ERISA. While providers justifiably have an interest in getting paid, there is no rational basis for allowing them to have a say in how a plan is administered, who the plan administrator is, who the fiduciaries of the plan are, the plan's funding structure, or the plan's relationship with a third-party claims administrator—all of which pertain to the plan members' interests, not to an outside third-party seeking payment.

"The Second Circuit has declined to expand the medical-care-provider exception beyond [the] narrow context" of claims for payment of benefits. *Am. Psychiatric Assoc. v. Anthem Health Plans*, 50 F. Supp. 3d 157, 164 (D. Conn. 2014) (citing cases), *aff'd sub nom. Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016). This issue has arisen at least once in the District of Connecticut. In *American Psychiatric Association v. Anthem Health Plans*, a health care provider attempted to rely on assignments received from patients to obtain standing to pursue a ERISA

§ 502(a)(3) claim for breach of fiduciary duty. *Id.* at 163–64. Judge Arterton flatly rejected this theory, "conclud[ing] that the medical-care-provider exception does not apply in the context of this case" because that exception is limited to circumstances where "'a beneficiary has assigned his claim [for payment] in exchange for health care.'" *Id.* at 163–64 (quoting *Simon*, 263 F.3d at 178). To hold otherwise "'would be tantamount to transforming health benefit claims into a freely tradable commodity.'" *Id.* at 164 (quoting *Simon*, 263 F.3d at 178); *see also Elite Center for Minimally Invasive Surgery, LLC v. Health Care Service Corporation*, 2016 WL 6236328, at *1 (S.D. Tex. 2016) (questioning whether the appellate court "would recognize an assignment of a participant's right to request information under ERISA § 104(b)(4) or to pursue a claim for civil penalties under ERISA § 502(c)," because "the right to request information is a right conferred by statute, not a contractual right under a benefit plan, and the statutory remedy is expressly given only to the requesting participant or beneficiary").

Even if plaintiffs could obtain derivative standing for non-benefits claims (and they cannot for all the reasons set forth above), their pleading shows that they did not do so. The assignment language upon which plaintiff rely only purports to confer the right to bring claims with respect to the payment of medical benefits. It is well established that "[n]ot all ERISA assignments convey the same rights"; plan participants or beneficiaries can "expressly assign[] only their right to payment," without "assign[ing] any other claims they may have under ERISA." *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015). Moreover, assignments "that do not ***refer specifically*** to fiduciary duty or to other non-benefits ERISA claims do not assign non-benefits claims to the plaintiff." *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. CIV.A. H-15-0297, 2015 WL 3756492, at *3 (S.D. Tex. June 16, 2015) (citing cases) (emphasis added).

In this case, True View alleges that each patient signed an Assignment of Benefits and Designation of Authorized Benefits ("AOB") that is the same or similar to the following terms:

18

   In considering the amount of medical expenses to be incurred, I, the undersigned, have insurance and/or employee health care benefits coverage with the above captioned, and hereby assign and convey directly to the above named healthcare provider(s), as my designated Authorized Representative(s), all **medical benefits and/or insurance reimbursement**, if any, otherwise payable to me for services rendered from such provider(s), regardless of such provider's managed care network participation status. I understand and agree that I am legally responsible for any and all actual total charges expressly authorized by me regardless of any applicable insurance or benefit payments. I hereby authorize the above named provider(s) to release all medical information necessary to process my claims under HIPAA. I hereby authorize any plan administrator or fiduciary, insurer and my attorney to release to such provider(s) any and all plan documents, insurance policy and/or settlement information upon written request from such provider(s) in order to claim such medical benefits, reimbursement or any applicable remedies. I authorize the use of this signature on all my insurance and/or employee health benefits claim submissions.

   I hereby convey to the above named provider(s), to the full extent permissible under the laws, including but not limited to ERISA §502(a)(1)(B) and §502(a)(3), under any applicable employee group health plan(s), insurance policies or public policies, any benefit claim, <u>liability or tort claim, chose in action, appropriate equitable relief, surcharge remedy or other right I may have</u> to such group health plans, health insurance issuers or tortfeasor insurer(s), **with respect to any and all medical expenses legally incurred as a result of the medical services I received** from the above named provider(s), and to the full extent permissible under the laws to claim or lien **such medical benefits, settlement, insurance reimbursement** and <u>any applicable remedies</u>, including, but are not limited to, (1) obtaining information about the claim to the extent as the assignor; (2) submitting evidence; (3) making statements about facts or law; (4) making any request, or giving, or receiving any notice about appeal proceedings; and (5) <u>any administrative and judicial actions by such provider(s) to pursue such claim, chose in action or right against any liable party or employee group health plan(s)</u>, including, if necessary, bring suit by such provider(s) against any such liable party or employee group health plan in my name with derivative standing but at such provider(s) expenses. Unless revoked, this assignment is valid for all administrative and judicial reviews under PPACA, ERISA, Medicare and applicable federal or state laws. A photocopy of this assignment is to be considered as valid as the original. I have read and fully understand this agreement.

Compl. at ¶266 (emphasis added).[8]

   Absent any anti-assignment language or other exclusions in a pertinent plan, this assignment appears to convey the right to recover payments/reimbursements for medical benefits under ERISA §

---

[8] Defendants reserve all rights to challenge the sufficiency of the actual assignments associated with each medical benefits claim, including whether the entities bringing suit obtained a proper assignment.

502(a)(1)(B). But it plainly goes no further; the assignment *does not* convey the right to bring any other ERISA claims. The language of the assignment does not refer to any fiduciary duty or other non-benefits ERISA claims. Courts analyzing similar assignment provisions have found that this type of language is not sufficient to assign non-benefits claims. For example, in *Sleep Lab at W. Houston v. Texas Children's Hosp.*, No. CIV.A. H-1S-01S1, 2015 WL 3507894, at *8 (S.D. Tex. June 2, 2015), the court found that an assignment that referenced the right to payment of "all medical benefits and/or insurance reimbursement," and the right "to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies"—but that did not reference any non-benefits ERISA claims—was insufficient as a matter of law to assign non-benefits claims. Similarly, in *Mid-Town Surgical Ctr., LLP v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 776-77 (S.D. Tex. 2014) the court found that an assignment of "any legal or administrative claim or chose in action . . . concerning medical expenses incurred" and any "ERISA breach of fiduciary duty claims and other legal and/or administrative claims," though broad, nevertheless failed to assign other specific ERISA claims.

On its face, the assignment here is limited to the payment/reimbursement of medical benefits. The first paragraph contemplates only the assignment of "medical benefits and/or insurance reimbursement." The second paragraph contains broader language about "any benefit claim, liability, or tort claim, chose in action, appropriate equitable relief, surcharge remedy or other right." But that assignment language is limited by the phrase, "with respect to any and all medical expenses legally incurred as a result of the medical expenses I received." There is also some broad language concerning "any applicable remedies" and "any administrative and judicial actions by such provider(s) to pursue such a claim, chose in action or right against any liable party or employee group health plan(s)." But, again, those provisions relate back to the payment of medical benefits—specifically, a "claim or lien [over] such medical benefits, settlement, [and] insurance reimbursement." To be sure, the assignment

contains a passing, vague reference to ERISA § 502(a)(3). But the sentence containing that statutory reference is limited to claims concerning "such medical benefits, settlement, [and] insurance reimbursement."

In short, the language used in the entire assignment is tied to payment for medical benefits. At no point does the authorization expressly refer to breach of fiduciary duty or other non-benefits claims, and a reasonable plan participant/beneficiary would not know that they were conveying such non-benefits claims. *See, e.g., Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1292 (9th Cir. 2014) ("Because Spinedex was assigned only the right to bring claims for payment of benefits, Spinedex has no right to bring claims for breach of fiduciary duty."); *Montefiore Med. Ctr. v. Local 272 Welfare Fund*, No. 14-CV-10229 (RA)(SN), 2015 WL 7970026, at *3 (S.D.N.Y. Oct. 19, 2015) ("By expressly assigning only their right to payment, Montefiore's patients did not also assign any other claims they might have under ERISA."), *report and recommendation adopted,* No. 14-CV-10229 (RA), 2015 WL 8073909 (S.D.N.Y. Dec. 4, 2015).

To summarize: Health care providers like True View cannot obtain derivative standing to assert non-benefits ERISA claims as a matter of law. And even if they could do so, the assignments that plaintiffs received do not confer standing on their face to assert non-benefits claims. Therefore, True View lacks statutory standing to pursue any claims beyond those for unpaid benefits under ERISA § 502(a)(1)(B). All other claims must be dismissed.

### E. Plaintiffs' Claims for Equitable Relief Under ERISA § 502(a)(3) Must be Dismissed Because They Are Improperly Duplicative of Plaintiff's Claim to Recover Benefits Under ERISA § 502(a)(1)(B).

The equitable relief claims that plaintiffs are pursuing under ERISA § 502(a)(3) in Counts One, Two, and Three are duplicative of the benefits claim plaintiffs are pursuing under § 502(a)(1)(B) in Count One. Because the latter section provides an adequate basis for relief, the § 502(a)(3) claims are not permissible as a matter of law and should be dismissed.

When evaluating claims under ERISA § 502(a)(3), courts focus on "the substance of the relief sought and the allegations pleaded, rather than the label used, and when a suit is, at bottom, a suit to recover plan benefits, a plaintiff may not simultaneously maintain a claim under Section [502](a)(3)." *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*, 2014 WL 10212850, at *9 (N.D. Tex. July 1, 2014). A plaintiff pursuing a benefit claim may not pursue ERISA § 502(a)(3) claims because that plaintiff already has adequate redress through ERISA § 502(a)(1)(B). *See, e.g.*, *Commc'ns Workers of Am., AFL-CIO v. Nynex Corp.*, No. 93 CIV. 3322 LMM, 2000 WL 420561, at *6 (S.D.N.Y. Apr. 17, 2000) (noting that "numerous courts in this circuit and others have noted the impropriety of breach of fiduciary duty claims where the relief requested under those claims is duplicative of that requested under a recovery of benefits claim," and citing cases); *Tolson v. Avondale Indus.*, 141 F.3d 604, 610 (5th Cir. 1998) ("Because Tolson has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section [502](a)(1), relief through the application of Section [502](a)(3) would be inappropriate."). This rule applies even if the plaintiff ultimately does not prevail on the § 502(a)(1)(B) claim for unpaid benefits. *See id.*

Here, there is no doubt that this a case about unpaid benefits, notwithstanding plaintiffs' various allegations about embezzlement and other wrongdoing. The relief sought in plaintiffs' complaint proves as much. In connection with their claim for payment of benefits under § 502(a)(1)(B), plaintiffs allege that they "have been and continue to be damaged in the amount of at least $11 million in unpaid benefits" due to alleged violations of plan terms and the wrongful denial of benefits claims. Compl. at ¶325. The counts of the complaint raising § 502(a)(3) claims simply parrot these allegations and seek the same essential damages. Count One's request for equitable relief is blatantly duplicative of its claim for recovery of benefits. *Id.* at ¶319. In Count Two (asserting § 502(a)(3) claim for breach of fiduciary duty and co-fiduciary liability), plaintiffs allege that defendants "ma[de] and uph[eld] wrongful invalid adverse benefit determinations . . . in an arbitrary and

capricious fashion," and seek a "surcharge" to remedy the wrongful denial of benefits. *Id.* at ¶¶329, 332. Then, in Count Three (asserting § 502(a)(3) claim for failure to provide full and fair review), plaintiffs allege that defendants failed to provide "full and fair review" of their benefits claims, which caused "[p]laintiffs' harm"—i.e., the lack of payment of benefits claims. *Id.* at ¶¶ 335–36.

At bottom, this is a case about the propriety of Cigna's denial of plaintiffs' benefits claims. Because plaintiffs are already pursuing those benefits claims—and have an adequate remedy under ERISA § 502(a)(1)(B)—they cannot simultaneously assert claims under ERISA § 502(a)(3).

### F.  Plaintiffs' Claim for Failure to Provide Documents Must be Dismissed.

In Count Four of the complaint, plaintiffs raise a claim for failure to provide "requested and required documentation." The law governing this claim is straightforward. ERISA § 104(b)(4) provides: "The *administrator* shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated . . . ." (Emphasis added.) ERISA § 502(c)(1)(B), in turn, provides that an administrator who fails to provide documents requested under § 104(b)(4) within 30 days is subject to a penalty of up to $110 per day.[9] A private right of action is authorized by ERISA § 502(a): "A civil action may be brought . . . by a participant or beneficiary . . . for the relief provided for in subsection (c) of this section . . . ."

Plaintiffs' claim for failure to provide documents must be dismissed for at least four reasons. First, as the statutory text makes plain, only the *administrator*—and *not the plan itself*—is required

---

[9] The text of the statute provides: "Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to [$110] a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." *See also* 29 C.F.R. § 2575.502c-1 (increasing the maximum penalty from $100 a day to $110 a day).

to provide documents. *See, e.g.*, *Crowell v. Shell Oil Co.*, 481 F. Supp. 2d 797, 814 (S.D. Tex. 2007), *aff'd*, 541 F.3d 295 (5th Cir. 2008) ("The plain and unambiguous language of § 1132(c)(1) requires that the plaintiff seek relief from the plan administrator, who is personally liable for any disclosure violations. . . . The statute makes no provision for liability to attach to any other person."); *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008) ("[S]ince Oxford is not 'the person specifically so designated by the terms of the instrument under which the plan is operated,' 29 U.S.C. § 1002(16)(A)(i), it is not a plan 'administrator' within the meaning of ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1)."). Accordingly, the claim must be dismissed to the extent it is asserted against the plan defendants. Second, True View has named incorrect plan administrators (with two exceptions, as discussed in Section B above) and, therefore, the claim must be dismissed as to the plan administrator defendants as well. Third, even if plaintiffs had named the proper parties, plaintiffs cannot assert this claim because they lack standing for all the reasons discussed in Section D above.

Fourth and finally, plaintiffs' claim is not viable to the extent that plaintiffs seek penalties for failure to provide documents not enumerated by § 104(b)(4). In addition to the SPDs and master plan documents mentioned in that statute, True View claims that it sought and was entitled to "the complete administrative claim file," "all documents showing the actual basis for the adverse benefit determination and the methodology used in applying that basis and making that determination," copies of IRS Form 5500, and "certification of PPACA grandfathered status." Compl. at ¶¶303, 338. While True View may have wanted those documents, the case law is clear that a plaintiff cannot recover penalties for failure to provide documents not enumerated in § 104(b)(4).[10] *See, e.g.*, *Lee v.*

---

[10] Moreover, plaintiffs cannot recover statutory penalties for failure to provide what it calls a "complete and accurate master governing plan document," where such master plan document does not exist because the Summary Plan Description ("SPD") is the governing plan document. *See e.g., Rhea v. Alan Ritchey, Inc.*, 85 F. Supp. 3d 870, 875 (E.D. Tex. 2015) ("[I]n the absence of another separate plan document, the 'Summary Plan Document' constitutes the plan governing Plaintiff's welfare benefits."); *Wise v. Plan Adm'r, IBM Ben. Plan for Retired Employees*, 2014 WL 3849975, *4 (D.Conn.2014) ("[S]everal courts have since held that a summary plan description can constitute a formal plan document . . . so long as no other contradictory plan document exists.").

*ING Groep, N.V.*, 829 F.3d 1158, 1161 (9th Cir. 2016) (no statutory penalty for failure to produce emails alleged to be relevant to benefits claim); *Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 143 (2d Cir. 1997) ("in fashioning § 104(b)(4)'s more limited specification of the categories of documents that must be disclosed to plan participants, Congress did not mean the clause 'instruments under which the plan is ... operated' to encompass all of the plan's papers, documents, recorded information, or reports"); *Curran v. Aetna Life Ins. Co.*, No. 13-CV-00289 NSR, 2013 WL 6049121, at *5 (S.D.N.Y. Nov. 15, 2013) (following Third and Seventh Circuits in holding that statutory penalties may not be assessed for violating other disclosure requirements under DOL regulations); *Murphy v. Verizon Commc'ns, Inc.*, 587 F. App'x 140, 144 (5th Cir. 2014) (unpublished) ("We agree with the majority of the circuits which have construed Section 104(b)(4)'s catch-all provision narrowly so as to apply only to formal legal documents that govern a plan."); *Elite Ctr. for Minimally Invasive Surgery, LLC v. Health Care Serv. Corp.*, No. 4:15-CV-00954, 2016 WL 6236328, at *1 (S.D. Tex. Oct. 24, 2016) (ERISA § 104(b)(4) does not require disclosure of claim denial information). For all these reasons, plaintiffs' claim for failure to provide documentation (Count Four) must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants listed below respectfully request that the Court grant this motion to dismiss.

Respectfully submitted,

_/s/ David A. Ring_
David A. Ring (ct14362)
Jenny R. Chou (ct28201)
David J. Norman (ct30082)
Robyn G. Gallagher (ct29596)
WIGGIN AND DANA LLP
One Century Tower, P.O. Box 1832
New Haven, CT, 06508-1832
Telephone: 203-498-4400
Facsimile: 203-782-2889
dring@wiggin.com
jchou@wiggin.com
dnorman@wiggin.com
rgallagher@wiggin.com

_Counsel for Defendants:_

Aaron's Inc. Employee Welfare Benefits Plan
Academy, Ltd. Welfare Benefit Plan
Accudyne Industries, LLC Employee Benefits PLan
Kimberly Adams, As Plan Administrator of Petroleum Geo-Services, Inc. Welfare
        Benefits Plan
Aggreko, LLC Health Benefits Plan
Jeffrey Agnew, As Plan Administrator of Jefferies Group LLC, Group Benefit Plan
Akin Gump Strauss Hauer and Feld LLP Medical Insurance Plan
Kelly Albright, As Plan Administrator of Structural Group Inc. Health & Welfare
        Benefits Plan
Courtney Anderson, As Plan Administrator of Tesco Corporation US
Diana Andersen, As Plan Administrator of Restated Zions Bancorporation Employee and
        Retiree Welfare Benefit Plan
Jonathan Andrews, As Plan Administrator of O'Reilly Automotive, Inc. Employee
Benefits Plan
Robert B. Arthur, As Plan Administrator of Pearson Inc. Welfare Benefit Plan
Asurion Health & Welfare Benefits Plan
Atos Health and Welfare Plan
BASF Corporation Employee Benefit Plan
Eric Best, As Plan Administrator of Fluor Federal Solutions, LLC Health & Welfare
        Plan
Mary Birk, As Plan Administrator of National Oilwell Varco Group Welfare Plan
Gordon Blasius, As Plan Administrator of Waste Management Health and Welfare
        Benefits Plan
Bernadette J. Branosky, As Plan Administrator of the JPMorgan Chase Health & Income
        Protection Plan for Active Employees
Braskem America, Inc. Employee Benefit Plan
Mike Brezina, As Plan Administrator of Hilcorp Energy Health and Welfare Plan

Steven L. Buchanan, As Plan Administrator of Compucom Systems, Inc. Health and
    Welfare Benefits Plan
Gerri Burruel, as Plan Administrator of McKesson Corporation Flexible Benefit Plan
CACI International Inc. Welfare Benefit Plan
CBRE Group Insurance Plan
CUNA Mutual Group Medical Care Plan for Represented Employees
Capgemini U.S. LLC Welfare Benefit Plan
Caprock Communications, Inc. Health and Welfare Benefit Plan
Mark Carlton, As Plan Administrator of Valerus Field Solutions Health &
    Welfare Benefit Plan
John F. Carroll, as plan administrator of Braskem America, Inc. Employee Benefit Plan
Chevron Corporation Omnibus Health Care Plan
Tim Cinalli, As Plan Administrator of The Western Union Company Health and Welfare
    Benefit Plan
Company of Others Cafeteria Plan
Compucom Systems, Inc. Health and Welfare Benefits Plan
Conrad Industries, Inc. Flex Plan
Stephen Crocker, as Plan Administrator of EnergySolutions, LLC Employee
    Benefits Plan
DHL Worldwide Express Health Plan
Denise Darab, As Plan Administrator of Accudyne Industries, LLC Employee Benefits
    Plan
Frederic Daussan, As Plan Administrator of Employee Group Health Plan of
    United Technologies Corporation
Diebold Incorporated Health and Welfare Benefits Plan
Bruce Driggett, As Plan Administrator of Hoerbiger Corporation of America, Inc.
    Employee Health Plan
Drilltec Health and Welfare
Ecolab Health and Welfare Benefits Plan
Eisai Corporation of North America and its Subsidiaries Health and Welfare Plan
John Ellsworth, As Plan Administrator of SelecTransportation Resources, LLC
    Welfare Benefit Plan
Emcor Group, Inc. Employee Welfare Plan
Employee Benefit Plan of Hapag-Lloyd America, Inc.
Employee Group Health Plan of United Technologies Corporation
EnergySolutions, LLC Employee Benefits Plan
Dara Engle, As Plan Administrator of Howard Hughes Management Co., LLC
    Health and Welfare Plan
William Ennis, as Plan Administrator of Academy, Ltd. Welfare Benefit Plan
Equifax, Inc. Major Medical Plan
Express Care Plan
James E. Farrell, Jr., As Plan Administrator of The International Regular Members
    Medical & Dental Plans of McKinsey & Company, Inc.
Louise Flores, As Plan Administrator of Hunting Energy Services Employee Benefit Plan
Fluor Employee Benefit Trust Plan
Fluor Federal Solutions, LLC Health & Welfare Plan
Gaffney-Kroese Electrical Supply Corp
John S. Gergen, As Plan Administrator of Kuehne & Nagel Group Life, AD&D, Hosp.

and Major Medical Dental
Glenn Gilkey, As Plan Administrator of Fluor Employee Benefit Trust Plan
Maria Gordon, As Plan Administrator of SM Energy Company Health and Welfare
    Employee Benefit Plan
Graftech International Holdings, Inc. Health and Welfare Plan
Barbara Grigat, as Plan Administrator of Health Care Plan for Hourly Employees
Group Medical Plan (Qatar Airways)
HRG North America Welfare Plan
Lori Hagedorn, As Plan Administrator of Ware Industries, Inc. Group Health and
    Welfare Plan
Lisa Haight, As Plan Administrator of Emcor Group, Inc. Employee Welfare Plan
Suzanne Hanson, As Plan Administrator of of Ecolab Health and Welfare
    Benefits Plan
Health and Welfare Benefit Plan for Employees of Helena Chemical Company
Health Care Plan for Hourly Employees
Erin Herndon, As Plan Administrator of Owens & Minor, Inc. Comprehensive Medical
    Insurance Plan
Hilcorp Energy Health and Welfare Plan
Hoerbiger Corporation of America, Inc. Employee Health Plan
Steve Hooks, As Plan Administrator of Sabine Neches Health & Welfare Fund
Louann Hudson
Howard Hughes Management Co., LLC Health and Welfare Plan
Laurie Hull, As Plan Administrator of Ipsos America, Inc. Health Plan
Hunting Energy Services Employee Benefit Plan
John Hurst, As Plan Administrator of Tingue, Brown and Co. Welfare Benefits Plan
The International Regular Members Medical & Dental Plans of McKinsey &
    Company, Inc.
Claudio Ippolito, As Plan Administrator of Eisai Corporation of North America
    and Its Subsidiaries Health and Welfare Plan
Ipsos America, Inc. Health Plan
Jefferies Group LLC, Group Benefit Plan
George Johnson, As Plan Administrator of Express Care Plan
Jones & Carter Inc. Flexible Benefit Account Plan
JPMorgan Chase Health & Income Protection Plan for Active Employees
John Karr, as Plan Administrator of Aaron's Employee Welfare Benefits Plan
Peter A. Kidd, As Plan Administrator of Sodexo, Inc. Medical Benefits Plan
Sally King, As Plan Administrator of Akin Gump Strauss Hauer and Feld LLP Medical
    Insurance Plan
Rachel Koenig, as Plan Administrator of Stewart & Stevenson Health & Welfare Benefit
    Plan
Ian Korr, As Plan Administrator of Gaffney-Kroese Electrical Supply Corp
Agnieszka Kotarowski, As Plan Administrator of Mercuria Energy Trading, Inc.
    Employee Benefits Plan
John Kristek, As Plan Administrator of Satake USA, Inc. Welfare Benefit Plan
Sebastian Kristof, As Plan Administrator of Noble Energy, Inc. Health Plan
Kuehne & Nagel Group Life, AD&D, Hosp. and Major Medical Dental
Audrey Lamastro
Tamera Landry, As Plan Administrator of Conrad Industries, Inc. Flex Plan

Landrys Medical Benefit Plan
Calvin Lee-Young, As Plan Administrator of Venterra Realty Inc. Benefit Plan
Julia Liebelt, As Plan Administrator of Landrys Medical Benefit Plan
Lincoln Harris LLC Group Medical Plan
Cindy Lukas, as Plan Administrator of Morgan Stanley Medical Plan
MPG Operations Employee Benefits Plan
Macys, Inc. Welfare Benefits Plan
Bijal Mahida, As Plan Administrator of HRG North America Welfare Plan
Jessica Marshall, As Plan Administrator of Asurion Health & Welfare Benefits Plan
Masterpiece Machine & Manufacturing Employee Health Benefit Plan
McCarthy Employee Health Care Payment Plan
McKesson Corporation Flexible Benefit Plan
Mercuria Energy Trading, Inc. Employee Benefits Plan
Thomas J. Merfeld, As Plan Administrator of Cuna Mutual Group Medical Care
        Plan for Represented Employees
Morgan Stanley Medical Plan
Karen Murray, As Plan Administrator of Yokogawa Corporation of America
        Flexible Benefits Plan
George H. Muskal, As Plan Administrator of BASF Corporation Employee Benefit Plan
Debrata Nandi, As plan administrator of Perry Homes LLC Health and Life Plan
National Oilwell Varco Group Welfare Plan
Edward Nelson, as Plan Administrator of Whataburger Employee Benefit Plan
Noble Energy, Inc. Health Plan
Stephen J. O'Bryan, As Plan Administrator of Macys, Inc. Welfare Benefits Plan
Tim O'Grady, As Plan Administrator of Drilltec Health and Welfare
O'Reilly Automotive, Inc. Employee Benefits Plan
Ocwen Financial Corporation Employee Welfare Plan
Catherine L. Olinski, As Plan Administrator of Stanley Black & Decker Health &
Welfare Program
Sharon Overstreet, As Plan Administrator of Texas Oil & Chemical Co II, Inc.
        Welfare Benefits Plan
Owens & Minor, Inc. Comprehensive Medical Insurance Plan
Gary Pearce, As Plan Administrator of Pearce Industries, Inc. Medical and Dental Plan
Pearce Industries, Inc. Medical and Dental Plan
Pearson Inc. Welfare Benefit Plan
Perry Homes LLC Health and Life Plan
Paul Peterson, As Plan Administrator of Atos Health and Welfare Plan
Petroleum Geo-Services, Inc. Welfare Benefit Plan
Vijay Pollard, As Plan Administrator of Star Pipe Products-Medical & Dental
        Plan
Kelly Pool, as Plan Administrator of CBRE Group Insurance Plan
Restated Zions Bancorporation Employee and Retiree Welfare Benefit Plan
Reynolds and Reynolds Company Group Health Benefit Plan
Debra Riggsby, As Plan Administrator of the Reynolds and Reynolds Company
        Group Health Benefit Plan
Michelle Robicheaux, As Plan Administrator of Masterpiece Machine &
        Manufacturing Employee Health Benefit Plan
Dennis Robinson, As Plan Administrator of Graftech International Holdings, Inc. Health

and Welfare Plan
SM Energy Company Health and Welfare Employee Benefit Plan
Sabine Neches Health & Welfare Fund
Lisa Sanders, As Plan Administrator of McCarthy Employee Health Care Payment Plan
Satake USA, Inc. Welfare Benefit Plan
Robyn G. Segady, As Plan Administrator of Ocwen Financial Corporation Employee
        Welfare Plan
SelecTransportation Resources, LLC Welfare Benefit Plan
Shawn Shope, As Plan Administrator of Capgemini U.S. LLC Welfare Benefit Plan
Sodexo, Inc. Medical Benefits Plan
Stanley Black & Decker Health & Welfare Program
Star Pipe Products – Medical & Dental Plan
Stewart & Stevenson Health & Welfare Benefit Plan
Michael Stillitano, As Plan Administrator of Employee Benefit Plan of Hapag-
        Lloyd America Inc.
Jill Stress, As Plan Administrator of Trimas Corporation Welfare Benefit Plan
Stronghold Ltd. Health and Welfare Plan
Structural Group Inc. Health & Welfare Benefits Plan
The Sun Products Corporation Welfare Benefits Plan
Christine Takacs, As Plan Administrator of Diebold Incorporated Health and Welfare
        Benefits Plan
Teach for America Employee Welfare Benefit Plan
E. Renee Tehi, As plan administrator of the Sun Products Corporation Welfare
        Benefits Plan
Breck Templeton, As Plan Administrator of the Company of Others Cafeteria
        Plan
Tesco Corporation US
Texas Oil & Chemical Co II, Inc. Welfare Benefits Plan
Tingue, Brown and Co. Welfare Benefits Plan
TriMas Corporation Welfare Benefit Plan
Valerus Field Solutions Health & Welfare Benefit Plan
Venterra Realty Inc. Benefit Plan
Ware Industries, Inc. Group Health and Welfare Plan
Waste Management Health and Welfare Benefits Plan
Western Union Company Health and Welfare Benefit Plan
Whataburger Employee Benefit Plan
Robert Whitaker, As Plan Administrator of DHL Worldwide Express Health Plan
Jennifer Williams, As Plan Administrator of Health and Welfare Benefit Plan for
        Employees of Helena Chemical Company
Robert Williams, As Plan Administrator of MPG Operations Employee Benefits Plan
Eric Wolf, As Plan Administrator of CACI International Inc. Welfare Benefit Plan
Cheryl Wyatt, as Plan Administrator of Stronghold Ltd. Health and Welfare Plan
Yokogawa Corporation of America Flexible Benefits Plan
Paula Zimmerman, as Plan Administrator of Teach for America Employee Welfare
        Benefit Plan

## CERTIFICATE OF SERVICE

This is to certify that on May 26, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

<div style="margin-left: 40%;">

*/s/ David A. Ring*
David A. Ring (ct14362)
WIGGIN AND DANA LLP
One Century Tower, P.O. Box 1832
New Haven, CT, 06508-1832
Telephone: 203-498-4400
Facsimile: 203-782-2889
dring@wiggin.com

</div>